Mr Justice Story
 

 delivered the opinion of the Court.
 

 This case comes before us from the circuit court of Rhode Island, upon a certified division of opinion of the judges of that court, upon the question whether the plaintiff1 was entitled to recover upon a statement of facts incorporated into the record. The action was an ejectment for two-third parts of certain land described in the writ; and the title of the parties being by descent, depends altogether upon the true construction of the statute of descents of Rhode Island, of 1822. Accordingly as that statute shall be construed, the land now in controversy bélongs to the plaintiff or the defendants.
 

 The material facts are, that the estate (two-thirds of which are demanded in the writ) was devised by John Collins to his daughter Mary Collins in fee. Upon her death in 1806, the same descended to her three children, viz. John C. Gardner, George Gardner, and Mary C. Gardner. The twobro-
 
 *85
 
 thers died intestate and without issue; and Mary C. Gardner, ' as heir to her brothers, became seised of the whole estate, and died intestate and without issue, in December 1822. The defendants are the uncle and aunt of Mary C. Gardner, the intestate, of the whole blood; being children of John Collins, the devisor, and brother and sister of her. mother, Mary Collins. The plaintiff is the brother of Mary C. Gardner, the intestate of the half blood; and he holds a conveyance of their shares from her other brothers and sisters of the half blood, they being children of her father by a iormer marriage. The plaintiff and his brothers and sisters of the half blood claim the two-thirds of the estate now in question, as her heirs of the- half blood; and the defendants claim the same as her heirs of the whole blood. It is admitted on all sides, that the one-third which ..Mary C. Collins took by
 
 immediate
 
 descent fronrher ihother, belongs to the heirs of the whole blood. But the other two-thirds, being taken by
 
 immediate
 
 descent from her brothers, it is contended, that by the statute of 1822, it passes to her heirs of the half blood.
 

 If this question had been settled by any judicial decision. ■ in the states where the la. . lies, we should, upon the unU form principles adopted by this Court, recognise that decision as a part of the local law. But it is admitted that no such decks •> has ever been made. If this had been an ancient statute, and a uniform course of professional opinion and practice had long prevailed in the interpretation of it, that would be-respected as almost of equal authority. But no such opinion or practice has been known to prevail; and indeed, the statute itself is but of very recent origin. Even the statute of 1798,; of which, in respect to this point, that of 1822 is almost a transcript, is not of a date so remote, as to enable us. to presume that many cases could have arisen in that state, on which to found a practical construction, without some unequivocal evidence.
 

 The most that has been urged is, that there has been some general understanding among the people, that such was the meaning of the statute; but even this, though very respectably attested, is encountered, by equally respectable statements on the other side. We are driven therefore to
 
 *86
 
 consider the question as entirely new and-unsettled; and to be decided not upon the mistakes of parties relative to their rights in one or two unndjudicated cases, even if they existed, but by the true construction of the statute itself.
 

 The statute of 1822 enacts, that “ when any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in equal portions to his or her kindred in the following course* &c.” Among other clauses is the following, “ if there be no father, then to the mother, brothers and sisters .of such intestate, and their descendants, or such of them as there be.” In the. present case there was no father or mother of Mary C. Gardner, the intestate, living at-the time of her decease; and as her brothers and sisters, of the half blood are her brothers and sisters within the meaning of the statute, they would be entitled to thé estate in question beyond all controversy; if there were no other disqualifying clause. But in a subsequent clause of the statute in the nature of a proviso, it is declared, that “ when the title to any estate of inheritance, as to which the person having such title shall die intestate,
 
 came by
 
 descent,
 
 gift, or devise from the parent or other kindred
 
 of the intestate, and such intestate die without children, such estate shall go to the
 
 kin next
 
 to the intestate of the blood of the person
 
 from whom such estate came or descended,
 
 if any there be.” The most material differences between the statute of 1798 and that of 1822, so far as regards this question is, that the words “ if any there be” are omitted in the former, which also uses the words
 
 u
 
 next of kin toj” instead of “kin next to.” Both of these circumstances have been'relied on at the bar as indicating a probable change of intention. It is said that both acts admit of two readings, viz. “ to such of the
 
 next of kin
 
 of the intestate as are of the blood, &c.” or
 
 “
 
 to the nearest of .such
 
 of the kin
 
 of the intestate as are of the blood,” &c. The latter reading will give the estate to a remote relation of the intestate of the blood, although he be not of the next of kin of the intestate. The former reading requires that the party should be of the next of kin, (that being the primary intention), as well as of the blood; and therefore, if a person be not of th¿ next pf kin of
 
 *87
 
 the intestate, although he be of the blood, he cannot take; and the words of the act of 1822, “ if any there be,” are relied on to fortify the construction.
 

 We think the. legislative intention in both acts was the same; and that the transposition of the words “ next of kin” to “ kin next,” was accidental, and not introductory of any new object. The true construction of the statute of 1822 is, that it gives the estate to the next of kin of the intestate who are of the blood, excluding all others though of a nearer degree who are not of the blood, &c.
 

 In this view of the clause, two questions'have been argued at the bar. 1. Whether the words “ of the blood” include the half blood ; or exclusively apply to the whole blood. 2. Whether the words “ came by descent, gift, or devise from the parent and other kindred of the intestate,” are limited to a proximate and
 
 immediate
 
 descent, gift, or devise from such parent, &c. to the intestate; or include a descent, gift, or devise which can be deduced mediately from or through any ancestor, however remote, who was the first purchaser to the intestate.
 

 The first question has not been seriously pressed in this Court by the counsel for the defendants, though it constituted in the court below a main ground of argument. We think that the phrase “ of the blood” in the statute includes the half blood. This is the natural meaning of the word “ blood” standing alone, and» unexplained by any context. A half brother or sister is of the blood of the intestate, for each of them has some of the blood of a common parent in his or' her veins. - A person is with the most strict propriety of language affirmed to be of the blood of another who has any, however small a portion, of the same blood derived from a common ancestor. In the common law, the word
 
 “
 
 blood” is used in the- same sense. Whenever it is intended to express any qualification, the word whole or half blood, is generally used to designate it, or the qualification is implied from the context on known principles of law. Thus, Littleton in his sixth section says, that none shall inherit “ as heir to any man, unless he be his heir of the
 
 whole
 
 blood; for if a man hath issue two sons by divers
 
 *88
 
 ventres, and.the eldest purchase lands, &c. &c. the younger brother shall not have, the land, &c. because the younger brother is but of the
 
 half blood
 
 to the elder.” The same distinction is found in section eighth of the same author; and Lord Coke in his commentary , on the text constantly takes it. So
 
 <
 
 Robinson, in his Treatise on Inheritances; 45, after laying down the rule,, that the person who is to inherit must be. of the. whole blood to the person from whom he proximately and immediately inherits; adds, that he must • also, be of the blood of the first purchaser.; but that it is sufficient to satisfy, this that he is of the half blood of such purchaser. The legislation of. Rhode Island leads to the Same result as to the meaning of the word “ blood.” That colony..was governed by the English law of descents from its.first ..settlement until the, year 1718, a period of more than , half a century. By an act passed in 1718 the real estate of the intestate was divided among all his children, giving the eldest son a double share, &c.; and in default of issue, the same was distributable among the
 
 next of kin
 
 of the intestate, within, equal degree, &c. This act was repealed in 1728, and the 'common law course of descents was revived and remained, in force until 17.70, when an act was passed, providing substantially for the,same distribution as the act of 1718. It contained,, however, this remarkable proviso, “mat no distribútion of ahy real estate inconse-quence of this act, shall extend or be made in the collateral tine beyond, the brothers and sisters of such, intestate and their children, and
 
 to those only of the whole blood”
 
 :In 1772 the act of 1770 was repealed in regard to the double share to the eldest son, but. in other respects, it remained in force until the revision in 1798, when the proviso that none should inherit., in the collateral line except the
 
 whole blood
 
 was dropped ; 'and there is not either in the act of 1798 or 6f 1822 any clause; referring to the blood ofany person as a stock of descent,'except the very clause-upon which the present questions, arise:. When, therefore, ihe distinction between the whole and half blood, was well known in the colony, not only as a part of the.common law, bq$. ás a part of its own legislation, and the proviso is
 
 *89
 
 dropped in which th'e words “ whole blood” were studiously used ;' and the words “ of the blood” only, are found in any correspondent provision; it affords a strong presumption, that the whole blood were no longer deemed to be exclusively entitled to inherit, but that the half blood should be let in. If the half blood weré hot permitted to inherit in cases of this sort, this anomaly might occur; that a son might inherit from his parent the moiety of ah estate directly, which he could not inherit from his brother of the half blood,- to whom it had passed by descent from the same parent, if such brother should die without issue. We see no reason, then,’ to doubt, that the words “ of the blopd,” include the half as well as the whole blood. The plaintiff, then, and those from whom he claims being the next of kin of the iiitestate
 
 (a)
 
 , and of the blood of her two brothers
 
 (b)
 
 , from whom she
 
 immediately
 
 derived that part of the estate which is-now in controversy;. is entitled to recover,. unless the statute in thé other part, of the clause defeats the descent.
 

 ' This leads us to the second question. The estate originally came from John Collins by devise to his daughter Mary Gollins,- and by descent from her to her three children, and '"mediately as to the two thirds to the intestate, through her brothers. The counsel for the plaintiff contends, that the clause looks Only to. th'e proximate and immediate descent; the counsel for the defendants, that it looks to the origin of the title in the first purchaser, ana requires that the party claiming as heir, should be of the blood of the first purchaser, through whatever intermediate devolutions by descent, gift br devise if may'have. passed, and however remote may be the first ancestor. If the latter be the true construction of the clause it .goes far. beyond the common law, for that stopped at -the last purchaser in the ancestral line, (and persons taking by devise or gift are deemed purchasers,) and
 
 *90
 
 ascended no higher than it could trace an uninterrupted course of descents. The common law, therefore, would have considered Mary Collins as the- first purchaser for all its own purposes of descent. The words are, “ when the title to.any real.'estate, &c. as to which the person having such title .shall die intestate
 
 came by
 
 'descent,
 
 gift or devise from the parent,
 
 or other Kindred of the intestate,” &c. Now what reason is there to suppose that the legislature, in this, cl ¿use, meant in favour “of
 
 the blood
 
 of the person,
 
 from whom such estate came or
 
 descended,” to extend its reach beyond that of the common law1? No such intention is disclosed on the face of the provision; and every progressive enactment, for the last fifty years in Rhode Island, is a relaxation* of the'strict canons of descent of the common -la'w. The words themselves ^certainly do not necessarily require such an interpretation. As to descents, as well' as . gifts and devises from a parent, it is plain that'the act looks only,-to the immediate descent or title. A descent from a .párent to a child cannot be construed to mean a descent'
 
 through
 
 and not
 
 from
 
 á parent.' So a gift or devise from a-parent must be construed to mean a gift'.or devise by the act of . that parent ;‘and not by that of some other ancestor ipore remote, passing-' through, the .parent. .It has been Urged, in anotherquarter entitled to great,respect, that the .words maybe construed distr-ibutively.;. that a distinction maybe taken.‘between a descent, • gift or devise, dram a parent, and a descent, &c. from other kindred; and so, also, that the- wordsdescent, gift and. devise .maybe construed distributively ; so. that in cases of descents, the-party , who shall inherit is to be of the blood of the first purchaser,, from whom*by
 
 intermediate descents
 
 it was passed to the intestate ; and that,' in cases of gifts or devises, the donor or devisor shall alone be the person whose blood is to be inquired for. It may be admitted; that the clause is susceptible of such a construction'without any great violation of its terms. But .we.do not think, that such is the natural construction of the terms, nor is any-legislative intention disclosed, which vyould justify us in adopting it. There does not seem any sound reason, why the clause should be-construed in the
 
 *91
 
 case.of a parent, differently from what it-would be in the case of any “other kindred of the intestate.”’ The latter words must be construed in the same manner as if each class of kindred had been enumerated in detail; such as uncles, brothers, grand-parents, cousins, Asc. &,c>t; and if they had been, the' same rule from the specific enumeration must have been applied ■ to them, as is now sought tó -be applied to the case of parents. The general expression must be deemed to include all the particulars. Then, as fo' the distinction between
 
 descents,
 
 and gifts and.devises-
 

 It is true, that in a sense an estate may be said to come by descent, from a' remote .ancestor to a person, upon whom it has devolved through' many intermediate descents. Rut this, if not loose language, is .not that sense" which’is. ordinarily annexed, to the term: When an estate is said to have descended from A; to B>, the natural and obvious meaning .of the words is, that it is an immediate descent from" A. to B. If other words of a statute shoüld seem to require another and more enlarged meaning, there would be no absolute impropriety in adopting it; but if the true sense is to be sought from the very terms
 
 per se,
 
 that which is the usual sense would seem most proper to be followed. It is not for courts of justice to indulge, in any latitude of construction, where the words do. not materially justify it; and there is no.express legislative intention to guide them. But .we think, that the connexion in which the words stand, justify us in adhering' to the ordinary interpretation. . If in cases of gifts and devises, the blood of the proximate donor or der visor is alone to be regarded, there being, no distinction pointed out in the words of the act, between, those cases and that .of descents; the very juxta position of the words affords a strong presumption, that the legislature intended to apply the same rule as to all. If the object was to re-, gard the blood of the party, from whom the estate was derived ; what reasoh is .there to suppose that, the legislature, intended less, regard to the blood of a devisor or donor, than to that of an. ancestor.1?' The mischief might'be as great in suffering the estate to. pass int.o the hands of strangers; when there were next of kin of the blood in the one case, as in. the
 
 *92
 
 other. On the other hand, there might be solid reasons for confining the preference of blood to cases of immediate descents, which coüld be easily known and easily traced. One of the known inconveniences of tracing back titles and relationship, is the obscurity which at a small distance of timé gathers over themi It would often be difficult to ascertain, whether there were not relations of a very distant' stock, of the blood of a remote ancestor; who might be entitled to the inheritance, to the exclusion of the immediate next of kin of the intestate. . And even the course of descents of his own title in a country, where estates' are universally partible, for two or three generations; might involve the estate of the intestate in inextricable difficulties; and disable the next of -kin from ascertaining, into what fragments it was to be subdivided with any Reasonable certainty. It would be no want of wisdom, therefore, in a legislature to limit its provisions in favour of the blood, to cases where the immediate^title could be traced with almost absolute certainty. Certainty of title, in a country where titles so rapidly, change hands, might furnish a. far safer principle of legislation, than any preference for the blood of persons remotely related to the intestate through some distant, and, perhaps, unknown ancestor. We think, then, that in the case of a gift or devise, the statute stops at the immediate donor or d.evisor, and ascends no higher for an,y blood. What reason is there to suppose, that in the case of a descent there was a different legislative intention1? In the case of a parent, the parent is, 'by the very terms of the statute, made the sole stock of descent, whether he derived it by descent, or by gift, or devise, from an ancestor or a stranger. . In the case at bar, .the mother of the intestate took the estate by devise from' her father. She was in by-purchase; and in the sense of the common law, as first purchaser, and, of course, the true stock of descent, holding the estate ut feudum antiquum.
 

 It has been said that the .object was. to preserve inheritances in the same family. To a limited extent this is true ; that is, as far as the legislature-has provided for suclilcases. No general declaration is made by the legislature'onrtbe
 
 *93
 
 subject; and no preamble, .which discloses any leading intention, exists.. What the legislative intention was, nan be derived only from the words they have used; and we cannot speculate beyond the reasonable- import of these words. The spirit of the act must be extracted from the words of the act, and not from, conjectures aliunde. The common law carries back in certain cases, the descent to the heirs of the first purchaser. But the common law canons of descents, are overturned by the statute of descents of Rhode Island. How then can we resort to the common law, to make up the supposed defects in the■ language of the statute1? . Here, there is not a casus omissus; but a complete scheme of descents; and the only question is, how much the proviso carves out and saves from the operation of the general rule. No such words as “ the first 'purcháset,” are to be fouhd in the statute, though it is sufficiently technical in other, respects; and what right'can this Court.possess, to exchange the words in this statute for the words, “first purchaser,” when they are not equipollent in meaning or extent1? If the legislature intended to set up anew the rule of the common law, as. to descents, &c. from the first purchaser, it seems scarcely credible that it should have omitted the Very phrase, considering that for a century at least it was a material ingredient in the law of descents of the colony. Then, again; if the argument now urged at this bar for the defendants; is well founded, it goes (as has been already stated) far beyond, and indeed to the overthrow of the common law on the very point pf first purchasers. Indeed, at the common law, a man-might sometimes inherit, who was of the whole blood of the intestate, who could not have inherited from the first purchaser. As in the case of a purchase by a son, who dies without issue, and his uncle inherits the same, and dies without issue, the father may inherit the same from the uncle, although he could not inherit from his own son
 

 (a)
 

 .
 
 The statute of Rhode Island'imparts to parents a right to inherit the real estates of their childreh; in cases where the latter die without issue.
 

 
 *94
 
 The statutes of descents of the different states in the union, are so different in their provisions, that it is not easy tp apply any general rule of construction to them. The cases cited at the bar, do however demonstrate, that in thosé states where a similar language is Used in their statutes of descents, the expression has been uniformly construed to mean immediate descents, gifts and devises, unless that construction has been overruled by the context. The statute of Connecticut, of 1784, which has been supposed to be'the model of that of Rhode Island, as to this proviso, is understood to have received this, co'nstruction
 
 (a)
 
 . Under words nearly similar, in the Virginia statute of 1792, (the words being, “ that where an infant shall die without issue, having title to any real estate as inheritance derived by gift, devise or descent
 
 from, the father,
 
 &c.”) it has been held that an
 
 immediate
 
 descent, from, the father, and not an
 
 intermediate
 
 descent was intended
 
 (b)
 
 .
 

 Upon the vyhole, our opinion is, that both points are in favour of the plaintiff We all think that the words “ of the blood” comprehend all persons of the blood, whether of the whole or half blood; and that the words, “ come by descent, gift or devise, from the parent or other kindred, &c.”' mean
 
 immediate
 
 descent, gift or devise, and make the immediate ancestor, donor or devisor, the sole stock of descent.
 

 A certificate will accordingly be sent to the circuit.court of Rhode Island, in favour of the plaintiff.
 

 This' cause came on to be heard on the transcript of .the record from the' circuit court of the United States, for the district, of. Rhode Island; and on the points on which the judges of the said circuit court were divided in opinion, and which were certified to this Court for its opinion; and was argued by counsel; on consideration whereof, it is ordered and adjudged by this Court, that it be certified to the said
 
 *95
 
 circuit court of the. United States for the district of' Rhode Island, that the plaintiff and those under whom he claims the estate in controversy, are heirs at law of Mary C. Gardner the intestate, and, as such heirs, are by the statute of descents of Rhode Island of (A. I). 1822), eighteen hundred and twenty-two, entitled to the same estate upon the facts agreed in the case, and that judgment ought to be^iven for the plaintiff in this cause; all which is ordered to b.e certified to the said circuit court.
 

 (a)
 

 • See Smith
 
 vs.
 
 Tracey, 2
 
 Mod.
 
 204 ; Crook
 
 vs.
 
 Watts, 2
 
 Vern. Rep.
 
 124; S. C.
 
 Shower. Parl. Cases,
 
 108.
 

 (b)
 

 See Cowper vs. Cowper, 2
 
 Pecre Will.
 
 720 735; Collingwood
 
 vs.
 
 Pace, 1
 
 Vent.
 
 424;
 
 Watkins on Descents.
 
 227, 228. [153.] note;
 
 Reeves on Descents,
 
 170.
 

 (a)
 

 See
 
 Littleton,
 
 s. 3. and.
 
 Co. Litt.
 
 10. b.
 
 Litt. s. 8. Co. Litt. 14. b.
 

 (a)
 

 а) See
 
 Reeves on-Reseents,
 
 160, &c.
 

 (b)
 

 1
 
 Munf.Rep,.183.
 
 3
 
 Call. Rep.
 
 120.