*Currey & Mowry*, for plaintiff.
*Hayes & Parkhurst*, for defendants.

---

HARRIET MORRIS & others *vs.* WILLIAM H. POTTER & others.

Under the statute of descents, Rev. Stat. chap. 159, § 6, a father of an intestate dying without issue takes an estate which descended to such intestate from her sister, although said sister had inherited the same through the maternal line, the words of the statute meaning, that the estate shall go to the next of kin of the blood of the person from whom the estate came by *immediate* descent.

Devise by A. of "that portion of my late father's estate which was left by him for the use of my sister, during her life, in trust, to my son-in-law, my executor and trustee, in special trust, for him to manage and improve and to collect and pay over the income and profits thereof as often as may be found convenient, equally to be divided between my grandchildren L. and M., daughters of my deceased daughter; the said income and profits to be paid to and applied by my eldest unmarried daughter to the use and benefit of my said grandchildren, and in case of the death or marriage of both of my said daughters, then the same to be paid to the legal guardian of my said grandchildren, and to be applied for their sole use and benefit as aforesaid. And in the event of the decease of either of my said granddaughters L. or M. without leaving issue then alive, my will is that her share of the property and estate devised and bequeathed herein by this item shall vest in and enure to the benefit of her sister who may survive, subject to the conditions of the trust established in this clause, and in the event of the decease of both of my said grandchildren without leaving issue, then the property and estate hereby devised and bequeathed to them shall go to and vest in my children and grandchildren as my heirs at law, according to law, as undevised property." The said L. died after the making of the will, during the life of the testatrix, without leaving issue. M. died subsequently to the testatrix, leaving a son. *Held*, that under the foregoing clause in the will of A., M. took an equitable estate of inheritance which vested in her son,

Morris *v.* Potter.

the intent to create an estate in fee being plain, and therefore the absence of words of inheritance being immaterial.

*Held, further,* that the second limitation over should be regarded as contingent, not upon an indefinite failure of issue, but upon a failure at the death of the surviving grandson, and that consequently said M. took a fee simple conditional, and not a fee tail.

BILL IN EQUITY for partition. Two questions were presented to the court for decision. The first was in regard to the construction of the second clause of the will of Elizabeth Amory, which is set out in full in the opinion of the court. The facts agreed upon by all parties were that William Bowen, by his will, proved February 20, 1832, devised one quarter part of the residue of his estate to Thomas Burgess, in trust, for his daughter, Sarah Skinner, during her life, with remainder after this equitable life estate to his three daughters, Harriet Morris, Maria Whipple, and Elizabeth Amory, in fee. Partition was subsequently made between the parties interested, and the estate described in the complainants' bill was vested in severalty in Thomas Burgess as trustee, subject to the provisions of William Bowen's will.

At the bringing of this suit Mrs. Skinner was dead. Mrs. Morris was the first named complainant of this bill. Mrs. Whipple was represented by her heirs. Mrs. Amory was dead and left a will. A codicil to the will dated May 28, 1845, was as follows : —

" Whereas in and by the third item of my said will I have provided that on the happening of the contingencies set forth in said item of my said will my granddaughters, Louisa Smith Howe and Mary Amory Howe, children of my deceased daughter, Julia B. Howe, shall come in and share in common with the children and descendants of my daughters Louise Morris Amory, Anna McLean Amory, and Helen Maria Lee, in the distribution of the trust property therein referred to ; and whereas since the making of my said will the said Louisa Smith Howe has deceased, and I have reason to believe that the said Mary Amory Howe will be otherwise liberally provided for, I do therefore hereby revoke and so alter that item of my said will as that in the happening of the contingencies enumerated in the two last clauses of the said third item the said Mary Amory Howe, and in case of her decease her lawful issue, shall share and participate in the distribution of the property therein described in common

with the children of my daughter Harriet B. Ives, and not with the issue of my said daughters Louise, Anna, and Helen before named, as provided in said two last clauses of said third item of said will. And in all other respects I hereby confirm and establish my said will.

" In witness whereof," &c.

The family descent was as follows : —

THOMAS AND ELIZABETH AMORY HAD CHILDREN.

— Louisa Morris.

— Anna M'Lean.

— Helen Maria } *Grandchildren of Mrs. Amory.*
    m. } Elizabeth Amory Lee.
William Raymond Lee. }

— Harriet Bowen
    m.
Robert Hale Ives.

— Julia Bowen [1] } Louisa Smith Howe.[1]
    m. } Mary Amory Howe [2] } *Great-grandchild of Mrs. Amory.*
Mark A. D'W. Howe }     m. } Hobart Emlen Hare.
    William Hobart Hare. }

*Rogers*, for the complainants, submitted their rights to the decision of the court.

*Arnold Green*, for Robert H. Ives, trustee of the residuary devisees of Mrs. Amory. I. Mary A. Howe took an equitable life estate under clause second. II. The limitations, contained in clause second, after her death, are void by the rule against perpetuities. III. After her death the property described in clause second vested in Robert H. Ives, as trustee under the residuary clause of Mrs. Amory's will.

After the death of Louisa Smith Howe and of Mary Amory (Howe) Hare, what becomes of the trust estate created by this second clause ?

There are no words of limitation annexed to the estate given to the trustee, nor to the estate given the beneficiaries. This would create an estate for life only in the beneficiaries ; *Chester*

---

[1] Died before testatrix.      [2] Died January, 1866.

v. *Painter*, 2 P. Wms. 335 ; *Demon on dem. of Moor* v. *Mellen*, 5 T. R. 558 ; unless the language of other portions of the will compels a different interpretation. The " real objects of the testatrix are to be accomplished so far as they can be consistently with the principles of law." *Nightingale* v. *Sheldon*, 5 Mason, 349.

The rule in *Shelley's case* can find no application here, for although the provisions of Rev. Stat. chap. 154, § 2, according to the decisions in *Jillson* v. *Wilcox*, 7 R. I. 518, and *Manchester et ux.* v. *Durfee*, 5 R. I. 553, would not prevent it ; yet the fact that the estate given the ancestor in this case, Mary A. Howe, is an equitable estate, and that the limitation over either by the concluding sentence of clause second if it should be held valid, or by the last two paragraphs of clause third, is a legal remainder in fee, allows no question in regard to the matter. Fearne Rem. p. 52, v. 9 (2).

If, then, Mary A. Howe had any interest in this devise beyond an equitable estate for her life ; and if her son, Hobart Emlen Hare, has in it any estate at all, it must be some estate created by implication.

What estate can be implied from the expressed wishes of the testatrix as found in the will proper ?

In the limitation of cross remainders to Louisa Smith Howe and Mary A. Howe, the testatrix uses the words, " without leaving issue then alive," referring to the period of death. A few lines further on, in the limitations after the death of the survivor of these two sisters, she uses other words, " without leaving issue." It is impossible to suppose that no different intent was involved in these differing expressions.

But the words, " without leaving issue," in the absence of such legislation in regard to them, as the 1st Vict. chap. 26, § 29, defining their meaning, import a general failure of issue, and the subsequent estates are void as against the law preventing perpetuities. There are two courses of interpretation open to one seeking a meaning from this cause favorable to Hobart E. Hare, son of Mary A. Howe, deceased.

1. To suppose that the expression, " without leaving issue," as subsequently used, means the same as the former expression, " without leaving issue then alive ; " and then to interpret the

will by the analogy of *Lethieullier* v. *Tracy*, 3 Atk. 774, as suggested in 1 Jarman on Wills, 490.

The limitations in the will to the granddaughters in cross remainder are exactly equivalent to, "if either of my said granddaughters, Louisa S. or Mary A. Howe, die without leaving issue then alive, during the lifetime of the other," and if these words are substituted for those in the will, the reasoning of Lord Hardwicke in *Lethieullier* v. *Tracy*, *supra*, applies (see 3 Atk. 796), and then, in his own language, "place these words in what manner you. please, they can make no limitation in tail." Then if Hobart E. Hare takes anything, it must be an estate in fee simple, either by purchase or inheritance.

2. Assuming that the words "without leaving issue" mean a general failure of issue, and that the subsequent limitations are therefore void, —

We then have a life estate given to the granddaughter of the testatrix, with the subsequent remainder void from depending on a general failure of her issue. This might permit the application of the familiar English rule in regard to implied estates, given in 2 Jarman on Wills, p. 491, as follows : "Where the person on whose general failure of issue a devise is expressly made expectant is the heir at law of the testator, he becomes, by the application of the rule under consideration, tenant in tail by implication, in precisely the same manner as if there had been a prior devise to him and his heirs in the will."

It can, of course, make no difference whether a fee simple be vested in the son or a fee tail in the mother, in reference to the interests of the residuary devisees. In either case the trustee named in clause second would hold for the benefit of Hobart E. Hare.

In reference to these courses of interpretation it is to be noticed, 1. That the residuary devise, by preventing any intestacy, obviates the "inconvenience and objection" spoken of by Jarman as resulting from the residue of estate or remainder in the property being undisposed of. This objection to a life estate in Mary A. Howe is removed; for if her son is to take there is no difference in effect between the first supposed explanation and the second. 2. A single granddaughter being in this case only one of several heirs, who collectively stand in the position of the person described

as heir by the expression of the English law, is not to be regarded with the same favor as if she alone was to take failing the devisees. The reason of the rule here fails, as does also that of the other maxim, so often quoted in the English cases, that clear words of gift are needed to take the estate from the heir.   In this case the residuary devise is in favor of those falling under the term heir, and anything given under clause second is at their expense. Hence any application of these rules must be in favor of clause third of the will, and in restriction of the special gift or gifts made in clause second.   To remove doubt of the meaning of this clause, the intent and meaning of the testatrix must be collected from other parts of the will, or, at least, " an indication of what the testator meant by these words which by themselves appear to be ambiguous."   *Wilson* v. *Eden*, 11 Beav. 289 ; *Lippitt* v. *Hopkins*, 1 Gallis. 457.

And the whole question at issue resolves itself into this :   Did the testatrix, as it appears from her entire will, including the codicils, intend Mary A. Howe to take in this property an estate of inheritance ? for the codicils are as much a part of this will as its own several clauses.   *Hill* v. *Chapman*, 1 Ves. Jr. 407.

The creation of any minor estate of inheritance by implication is subject to the same rules of construction as a fee simple.   " If it appears affirmatively from all the other provisions of the will that such was the intention of the testatrix, it will pass."   *Baker* v. *Bridge*, 12 Pick. 27 ;   *Godfrey* v. *Humphrey*, 18 Pick. 539.

And the converse of this must, from the principles of construction be equally true.

This will was executed January 25, 1845.   On the 28th of May, 1845, but four months afterwards, the testatrix entirely changes the disposition made in regard to Mary A. Howe, the then survivor of these sisters, and instead of allowing her a share in the residuum, postpones her claim to the contingency of three of her aunts dying " without leaving issue."   These words, whether construed in this place as a general or special failure of issue, indicate an intention to place Mary A. Howe in the least favored class of devisees.   Indeed, the direction of the codicil that Mary A. Howe and her children shall take with Harriet B. Ives and her issue, in connection with clause fourth of the will, shows a design on the part of the testatrix to give

this grandchild as little as possible, without absolutely excluding her from the testamentary provisions.

The court, gathering the wishes of the testatrix from the entire will, must so explain each part as to make a consistent whole. The words of the will, in their plain sense, convey no legal meaning. If any presumption arises from clause second that a special gift is to be supposed to Mary A. Howe and her heirs, or the heirs of her body, this presumption is certainly rebutted by the first codicil, and a contrary one raised of equal strength. At least these presumptions balance each other, leaving the words of clause second subject to severe and strict construction. This, of course, after the death of Louisa Smith Howe, is an equitable life estate to Mary A. Howe, with equitable remainder in fee to residuary trustee, subject to residuary trusts.

The intention of clause second is vague. The intention of codicil first very clear. The intent of the codicil must then prevail.

*T. C. Greene*, for Hobart E. Hare, one of the defendants and a great-grandchild of Mrs. Amory (see family descent p. 60, *supra*), contended that said Hobart E. Hare had an equitable estate in fee simple in the one-third part of the trust estate created by the second item of Mrs. Amory's will. I. Her will and codicil show that she intended that Mary Amory Howe and her issue should take an absolute interest or estate in fee simple in the real estate described in the second clause of her will. II. Louise S. and Mary A. Howe each took an equitable estate in fee simple in the trust estate, created and described in said second clause, it being an estate in fee simple determinable upon the death of the said Louise S. or Mary A. without issue, that is, a qualified base, or determinable fee in the estate in question. 1 Kent Com. 9, 10. As Louise S. Howe died before the testatrix, her share vested in her sister, Mary A. Howe, immediately upon the death of the testatrix, and Mary A. Howe had the fee simple of the estate, subject to be divested in case of death without issue, but as she died leaving issue, the estate descended in fee to that issue, viz., Hobart E. Hare. III. There is a gift of the entire incomes and profits of the estate, to be divided between the said Louise S. and Mary A. Howe. 2 Redfield on Wills, p. 711, § 17 ;

*Stewart* v. *Garnett*, 3 Sim. 398. IV. The technical words " heirs and assigns " are not requisite to create an estate in fee in a will. The court may give a fee, when no words of limitation are used, if the intention of the testator can be collected from other parts of the will. 2 Jarman on Wills, s. p. 180, and cases cited ; 2 Redfield on Wills, 707, § 11 ; 714, § 27, and cases cited ; 713, § 24 ; 728, § 48 ; *Paris* v. *Miller*, 5 M. & S. 408 ; *Thrope* v. *Sharpe*, 6 Bing. 630 ; 1 Jarman on Wills, \*681. V. Where the testatrix provided that in the event of the death of either of her said grandchildren without issue, her share of the property and estate, devised by the second clause of the will, shall vest in and enure to the benefit of her sister, &c., she uses the words " property and estate," which have repeatedly been held to pass a fee simple, with the intention that one grandchild was to have one half and the other the other half of the estate. *Doe dem. of Orpe* v. *Frost*, 1 B. & C. 638. VI. The words " property " and " estate " must have the same meaning in the first part of the clause as they do when used in the latter part. If they carry a fee in the last case, they will in the first. VII. The defendant, Robert H. Ives, trustee, took an estate in fee simple under the second item of the will. A trustee takes that quantity of interest which the purposes of the trust require, the question being, not whether the testatrix used words of limitation or expressions adequate to carry an estate of inheritance, but whether the exigences of the trust demand a fee. Hill on Trustees, \*239 ; 2 Redfield on Wills, 713, 720, § 40 ; 714, § 27 ; *Smith* v. *Berry*, 8 Ohio, 365. VIII. A devise in fee in trust for another, without any words of limitation, will make the equitable estate of the *cestui que trust* coextensive with that of the trustee. 2 Redfield on Wills, p. 701, § 10 ; *Challenger* v. *Sheppard*, 8 T. R. 597 ; *Knight* v. *Selby*, 3 M. & G. 92 ; *Moore* v. *Cleghorn*, 10 Beav. 423 ; *Hudson* v. *Ball*, 14 Sim. 558 ; *Hutchinson* v. *Stephens*, 1 Keen, 240. As Mr. Robert H. Ives took an estate in fee simple in trust, therefore his beneficiaries, Louisa S. Howe and Mary A. Howe, also took a coextensive estate, to wit, an estate in fee simple. IX. The respondent, Hobart E. Hare, can take an estate in fee simple by way of implication.

The facts upon which the second question presented for consideration arose are stated in the opinion of the court.

*Arnold Green*, for Charles Morris Smith, assignee of John Whipple, deceased, contended that said Whipple as heir of his daughter, Mrs. Vinton, took that portion of her estate which she received from Mrs. Gammell, and that it passed by his assignment, and must now be adjudged to his assignee.

I. Mrs. Gammell is in this case the "*person*" spoken of in § 6, chap. 159, of Revised Statutes, "*from whom*" the "*estate came or descended*" to Mrs. Vinton. The meaning of the statute being immediate descent, and not descent from some remote person through other intermediate holders.

This doctrine rests on the unanimous decision of the Supreme Court of the United States in the case of *Gardner* v. *Collins*, 2 Pet. 58, in which the question for determination was the meaning of the Rhode Island canon of 1822 (Dig. 1822, p. 223), which was incorporated without change into the Dig. of 1844 (Dig. of 1844, p. 239), and into that of 1857 as § 6 of chap. 159 of Revised Statutes.

This decision was followed by the Circuit Court of the United States, in Rhode Island District, November Term, 1855, in the case of *Cole et ux.* v. *Bailey*, 2 Curtis, 562.

Besides this, in *Gardner* v. *Collins*, before referred to, Story, J., referring to Reeves on Descents, 16, &c. ; Munford, 183 ; 3 Call, 120, says that the Connecticut statute of 1784, supposed to be the model of that of Rhode Island, and the Virginia statute of 1792, containing a similar provision, had both received the interpretation claimed in this case. 2 Pet. 94.

II. John Whipple was in this case the next of kin to Mrs. Vinton of the blood of Mrs. Gammell, in the meaning of the statute, being their common father. Mrs. Vinton and Mrs. Gammell were, though it is here not important, sisters of the whole blood.

In *Cole et ux.* v. *Bailey*, before referred to, Curtis, J., held : —

*a.* That a father is of the blood of his daughter within the meaning of the Rhode Island canon.

*b.* That the canon of descents of ancestral estates is the same as of other estates, save that the descent is limited to those of the blood of the person from whom the estate came to the intestate.

Hence the direction of § 1 of chap. 159 Revised Statutes determines the degrees of kinship in all cases, and under § 6 these

degrees are to be reckoned in a given blood. Sec. 1 gives the first place to the children, and failing these, gives the second place to the father. See *Smith* v. *Smith et als.* 4 R. I. 1.

Hence when Mrs. Vinton died without issue, and intestate, the portion of this estate, being one sixtieth undivided part of a remainder in fee therein attendant on the life estate of Mrs. Skinner, which was received by Mrs. Vinton from her sister Mrs. Gammell, went to the next of kin to Mrs. Vinton of the blood of Mrs. Gammell, or John Whipple, her father. As Charles M. Smith holds as assignee Mr. Whipple's title, one sixtieth of this estate must be decreed to Mr. Smith as assignee.

DURFEE, J. Two questions are presented to us for decision in this case. We will first consider the question which has been raised in regard to the construction of the second clause of the will of Elizabeth Amory. The clause is as follows : —

"Second. I give, devise, and bequeath all my share, right, title, interest, claim, and demand in and to that portion of my late honored father's estate, which was left by him for the use of my sister, Mrs. Sarah Skinner, during her life, now in part in the hands of Thomas Burgess, of Providence, in trust, to my son-in-law, Robert Hale Ives, of Providence, my executor and trustee, in special trust, for him to manage and improve and to collect and pay over the income and profits thereof as often as may be found convenient, equally to be divided between my grandchildren, Louisa Smith Howe and Mary Amory Howe, daughters of my deceased daughter, Julia Bowen Howe ; the said income and profits to be paid to and applied by my eldest unmarried daughter to the use and benefit of my said grandchildren, and in case of the death or marriage of both of my said daughters, then the same to be paid to the legal guardian of my said grandchildren, and to be applied for their sole use and benefit as aforesaid.

" And in the event of the decease of either of my said granddaughters, Louisa S. or Mary A. Howe, without leaving issue then alive, my will is that her share of the property and estate devised and bequeathed herein by this item, shall vest in and enure to the benefit of her sister who may survive, subject to the conditions of the trust established in this clause, and in the event of the decease of both of my said grandchildren without leaving issue, then the property and estate hereby devised and bequeathed

to them shall go to and vest in my children and grandchildren as my heirs at law according to law, as undevised property."

The said Louisa S. Howe died after the making of the will, during the life of the testatrix, without leaving issue then alive. The testatrix is dead, and her will was proved in 1858. The said Mary A. Howe died in 1866, leaving a son, Hobart Emlin Hare. The question put to us is, whether the said Mary A. Howe, under the foregoing clause, took an equitable estate of inheritance, which now vests in her son, or an estate for life only. The question arises from the fact, that the clause annexes no words of limitation, either to the estate given to the trustee, or to that given to the beneficiaries. If, however, the intent to create an estate in fee is plain, the absence of words of inheritance is immaterial. We think it clear, both from the requirements of the trust created and from the language used to describe the property devised, that the testatrix meant that the trustee should take all the estate which she had in the property mentioned, which was an estate in fee. The language used to describe the interest devised to the *cestuis que trust* is more open to question; but still, on an examination of the entire clause, we have little doubt that the testatrix meant they should take an estate of inheritance. In *Stewart* v. *Garnett*, 3 Sim. 398, the devise of the rents of an estate was held to pass the fee; and it has also been held, that a devise in fee in trust for another, without words of limitation, will vest an equitable estate in fee in the *cestui que trust*. *Challenger* v. *Sheppard*, 8 T. R. 597; *Moore* v. *Cleghorn*, 10 Beav. 423. But, without relying too much on those cases as precedents, we think the closing paragraph of the clause makes it quite evident that the testatrix did not suppose she was giving the two granddaughters there named an estate for life only. She there provides that, in the event of the decease of either of them without leaving issue then alive, *her share of the property and estate*, devised by the clause, shall go to her surviving sister; and in the event of the decease of both without leaving issue, then the *property and estate thereby devised* to them shall go to her children and grandchildren as undevised property. If she had supposed that she had devised to each of them only a life estate, she could not have supposed that, upon the death of either of them, there would remain anything of the share of the

estate belonging to the deceased to go over to the survivor, or that, upon the death of both of them, there would remain anything of the estate devised to them to go over to her children and grandchildren. The fact, also, that the devise over was to take effect only in case of a death without leaving issue, leaves it to be inferred that it was in the mind of the testatrix that, in case there were surviving issue, such issue would succeed to the estate. It has been held that a devise without words of inheritance, with a limitation over, if the devisee dies under age, will give the first devisee an estate in fee by implication. *Frogmorton* v. *Holyday*, 3½ Burr. 1618; *Doe* v. *Wendale*, 9 East, 400; *Doe* v. *Coleman*, 6 Price, 179; *Frovey* v. *Ranet*, 10 East, 400; *Waring* v. *Middleton*, 3 Des. 249. We think the inference in favor of an estate of inheritance is quite as strong, where the devise over is contingent upon the death of the immediate devisee without leaving issue. In *Richardson et ux.* v. *Noyes et al.* 2 Mass. 56, it was held that a devise, without words of inheritance, to three 'sons, with a limitation over in these words, to wit: " Also, my will is, that if either or any of them should die without children, the survivor or survivors to hold the interest or share of each or any of them so dying without children as aforesaid," would pass to the first devisees an estate in fee simple, determinable on the contingency of their dying without issue, and on that contingency, vesting in the survivor or survivors by way of executory devise. We therefore conclude that the estate which vested in the said Mary A. Howe, under the clause in question, was an equitable estate of inheritance. We find nothing in other parts of the will, to which we have been referred, which would lead us to qualify this conclusion. We also think the estate was a fee simple conditional, not a fee tail, our opinion being that the second limitation over should be construed with reference to the first, and that, so construed, it well may, and should, be regarded as contingent, not upon an indefinite failure of issue, but upon a failure at the death of the surviving granddaughter.

The second question submitted to us for decision arises upon the following facts, to wit: William Bowen, whose will was proved February 20, 1832, devised to his daughter, Sarah Skinner, an equitable estate for life, with remainder in fee simple to his other three daughters, one of whom was Maria, the wife of

John Whipple. Mrs. Skinner died January 25, 1868. Maria, the wife of John Whipple, died in 1836, leaving five children. Mrs. Gammell, one of these children, died in 1839, leaving no issue; and Mrs. Vinton, another of them, died in 1840, leaving no issue; and afterwards their father, John Whipple, deceased. The question put to us is, whether John Whipple (he being of kin next to Mrs. Vinton of the blood of Mrs. Gammell) inherited under the statute (Rev. St. ch. 159, § 6) from Mrs. Vinton the portion of the estate aforesaid, which came to her from her said sister, Mrs. Gammell; the inquiry being whether, in determining who is entitled as next of kin of the intestate " of the blood of the person from whom the estate came or descended," we are to look for the next of kin of the blood of the person from whom the estate came by the *immediate* or by some more *remote* descent. This question came before the Supreme Court of the United States in the case of *Gardner* v. *Collins*, 2 Pet. 58, and it was there held that the persons entitled under the statute were the next of kin of the intestate of the blood of the person from whom the estate came by *immediate* descent. This decision was made in 1829, and, so far as we know, has since then been accepted as giving the correct construction of the statute. We think the construction there adopted rests upon valid reasons, and is the true construction, and, consequently, that the sixtieth part of the estate in question, which came to Mrs. Vinton from Mrs. Gammell, descended upon her decease to her father, John Whipple, he being of kin next to her of the blood of Mrs. Gammell. *Decree accordingly.*