TIMOTHY T. ARNOLD *vs.* CHARLES M. O'CONNOR *et ux.*

JUNE 3, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Statute of Descent. Ancestral Estate.*

In construing the statute of descent, Gen. Laws, 1909, cap. 316, § 6, relative to "ancestral estate" those entitled under the statute are the next of kin of the intestate of the blood of the person from whom the estate came by *immediate* descent.

*(2) Statute of Descent. Ancestral Estate.*

Gen. Laws, 1909, cap. 316, § 6, provides "When the title to any real estate of inheritance, as to which the person having such title shall die intestate, came by descent, gift or devise, from the parent or other kindred of the intestate, and such intestate die without children, such estate shall go to the kin next to the intestate, of the blood of the person from whom such estate came or descended, if any there be."

*Held*, that Section 6 did not make a distinct and independent provision for the descent of ancestral estates, but it was a proviso only to the canons contained in the preceding sections of the statute and degrees under Section 6 are to be reckoned according to the canons.

*Held*, further, that the expression "of the blood of the person from whom such estate came or descended" included all within the canons of descent who had any of the blood of that person, and did not restrict the right to take to *descendants* of such person.

BILL IN EQUITY for partition. Certified under Gen. Laws, 1909, cap. 298, § 5.

BAKER, J. This is a bill for partition.

One Ellen O'Connor in her lifetime was seized and possessed in her own right in fee simple of a certain parcel of land with dwelling house thereon situate on Thayer street, in the city of Providence, as more particularly described in the bill of complaint. This real estate was devised to her by her brother, Patrick O'Connor, by his last will which was duly admitted to probate on the 14th day of November, 1909. The said Ellen O'Connor died on the 24th day of September, 1912, intestate and without issue. An administrator was duly appointed upon her estate. All debts and claims against it have been paid and the administrator's final account showing the distribution of the intestate's personal estate among her heirs at law has been allowed. At her death she left as heirs at law a brother, Timothy O'Connor, nine nephews and nieces, two grandnieces and a grand-nephew, descendants of her deceased brothers and sisters. Said Timothy O'Connor died the 9th day of December, 1913, testate, and Elizabeth O'Connor, one of the complainants, is the sole devisee and legatee under said Timothy's will, as well as executrix thereof, which was duly admitted to probate and all claims against and debts due from his said estate have been paid by said executrix. One of the said nephews of said Ellen O'Connor is Charles M. O'Connor, who is the only child of said Patrick O'Connor, the devisor of said real estate. Said Charles M. O'Connor and his wife Margaret are the only respondents. All the descendants of the deceased brothers and sisters of said Ellen, other than said Charles M., entitled to be regarded as her heirs at law under the third paragraph of Section 1 of Chapter 316 of the General Laws, their respective husbands and wives, and said Elizabeth O'Connor are included as complainants in the bill.

The complainants allege that they are seized and possessed of three undivided fourth parts of said estate and that the respondent, Charles M. O'Connor, is seized and possessed of the remaining one-fourth part thereof; that in response to their request the respondents have failed to agree with them in either making the division of said real estate or in the sale of the same and that therefore they have filed their bill seeking partition.

To the bill the respondents have demurred, stating three causes of demurrer. The third cause which specifically raises the only issue involved is as follows: "3d. That the said complainants have not in their said bill shown any claim or right, title or interest whatsoever in and to the premises particularly set forth in said bill as entitles them in the court of equity to the relief so prayed for."

As a result of the hearing upon the demurrer in the Superior Court and before decision thereon, the following question of law was certified to this court for its determination, under Section 5 of Chapter 298 of the said General Laws, 1909, namely: "Does Charles O'Connor, as the only son and heir at law of Patrick O'Connor, from whom the property in issue came by devise to Ellen O'Connor, take said property as the kin next to Ellen O'Connor of the blood of Patrick O'Connor under the provisions of the laws of descent in force in this State to the exclusion of all the parties complainant?"

A consideration of this question involves the interpretation of the laws of descent in force in this State at the time of the death of Ellen O'Connor, as contained in said Chapter 316 of the General Laws and particularly the interpretation of Section 6 of said Chapter. Section 6 is as follows: "Sec. 6. When the title to any real estate of inheritance, as to which the person having such title shall die intestate, came by descent, gift or devise, from the parent or other kindred of the intestate, and such intestate die without children, such estate shall go to the kin next to the intestate, of the blood of the person from whom such

estate came or descended, if any there be; and as between the legal and equitable title, in case of merger, the equitable title shall govern the course of descent under the provisions of this section."

It is plain that the real estate involved in this case is of the kind referred to in Section 6 and is what is commonly known as ancestral estate. This statute as to the descent of ancestral estates has been so frequently interpreted by courts as to considerably simplify the task of its interpretation in the present instance. In this case it is obvious that the person dying "intestate" "without children" while seized in fee of said real estate is Ellen O'Connor. In the present case at least it would seem easy to point out the person from whom the estate left by Ellen O'Connor "came by descent, gift or devise" as "kindred of the intestate." It was, however, formerly argued that these words were not limited to a descent, gift or devise from the "immediate ancestor, donor or devisee," but included a descent, gift or devise from a remote ancestor who was the first purchaser mediately to the intestate. This question was considered by the Supreme Court of the United States in *Gardner* v. *Collins*, 2 Peters, 58 (1829). In that case the court held that "the person from whom such estate came or descended" meant not the first purchaser, but the "immediate ancestor, donor or devisor" from whom the estate came to the intestate. See, also, *Saunders* v. *Gould*, 4 Peters, 392 (1830), and *Cole* v. *Batley*, 2 Curtis, 562 (1855). In *Morris* v. *Potter*, 10 R. I., 58, the same question was considered on page 70, where the court says: "The inquiry being whether, in determining who is entitled as next of kin of the intestate 'of the blood of the person from whom the estate came or descended,' we are to look for the next of kin of the blood of the person from whom the estate came by the *immediate* or by some more *remote* descent. This question came before the Supreme Court of the United States in the case of *Gardner* v. *Collins*, 2 Pet., 58, and it was there held that the persons entitled under the statute were the next of kin of

the intestate of the blood of the person from whom the estate came by *immediate* descent. This decision was made in 1829, and, so far as we know, has since then been accepted as giving the correct construction of the statute. We think the construction there adopted rests upon valid reasons, and is the true construction." This rule, although not alway distinctly referred to, is in effect recognized in all of the cases in this court arising under this statute, both earlier as well as later than *Morris* v. *Potter.* See, also, *Buckingham* v. *Jacques,* 37 Conn. 402; *Clark* v. *Shailer,* 46 Conn. 119; *Hyatt* v. *Pugsley,* 33 Barb. 373; *Wheeler* v. *Clutterbuck,* 52 N. Y. 67. In this case therefore the person of Ellen O'Connor's "kindred from whom such estate came or descended" is her brother, Patrick O'Connor.

(2)    The next inquiry is to determine who are "the kin next to the intestate" Ellen O'Connor. It is generally held that Section 6 itself provides no general canons of descent and we must therefore look elsewhere for the answer.

The laws of descent intended to be of general application are set out in the early sections of Chapter 316 of the General Laws. Section 1 of this chapter is as follows:

"Section 1. Whenever any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass excepting as provided in Section 6, in equal portions to his kindred, in the following course:

"First. To his children or their descendants, if any there be.

"Second. If there be no children nor their descendants, then to the father of such intestate.

"Third. If there be no father, then to the mother, brothers, and sisters of such intestate, and their descendants, or such of them as there be."

Upon failure of all kindred within the degree specified in Section 1 provision is made for the descent of such estate to the kindred in remoter specified relationship in Section 2. It is not necessary to quote it in this case.

Section 5 of said Chapter is as follows: "Sec. 5. The descendants of any person deceased shall inherit the estate which such person would have inherited had such person survived the intestate, subject to the express provisions of these canons of descent."

The present question was considered and answered in *Gardner* v. *Collins, supra,* on page 85. The court in that case was interpreting the statute of descent of this State as contained in the Public Laws of 1822. It was then and has remained practically the same as appears now in Chapter 316 of the General Laws of 1909. The words "excepting as provided in Section 6" in Section 1 of Chapter 316 were first inserted in the General Laws of 1896, and then also was added the provision at the end of what is now Section 6 relative to the merging of the legal and equitable titles.

The provision as to the devolution of ancestral estates first appeared in the statutes of this State of 1798. The revision of 1822 made two changes as follows: "next of kin to the intestate" in the statute of 1798 is altered in 1822 so as to read "kin next to the intestate," and in 1822 the words "if any there be" were added at the end of the section as it then was. We do not think that any of these changes materially affect the interpretation of the act in so far as the questions now considered are concerned.

In *Gardner* v. *Collins, supra,* brothers and sisters of the half blood of the intestate were the plaintiffs. The defendants were an uncle and aunt of the intestate, described in the opinion as "of the whole blood," being brother and sister of the mother of the intestate. The court said, referring to the intestate: "as her brothers and sisters of the half blood are her brothers and sisters within the meaning of the statute" (referring to the Statute of 1822 as to the descent of real estate in general) "they would be entitled to the estate in question beyond all controversy if there were no other disqualifying clause. But in a subsequent clause of the statute, in the nature of a proviso, it is declared that" (here the section as to ancestral estate is quoted). The

court, after noting the differences between the statutes of 1798 and 1822 already mentioned, says: "Both of these circumstances have been relied on at the bar as indicating a probable change of intention. It is said that both acts admit of two readings, viz.: 'to such of the next of kin of the intestate as are of the blood' or 'to the nearest of such of the kin of the intestate as are of the blood.' The latter reading will give the estate to a remote relation of the intestate of the blood, although he be not of the next of kin of the intestate. The former reading requires that the party should be of the next of kin (that being the primary intention) as well as of the blood; and therefore, if a person be not of the next of kin of the intestate, although he be of the blood, he cannot take; and the words of the act of 1822 'if any there be' are relied on to fortify this construction. We think the legislative intention in both acts was the same; and that the transposition of the words 'next of kin' to 'kin next' was accidental, and not introductory of any new object. The true construction of the statute of 1822 is that it gives the estate to the next of kin of the intestate, who are of the blood, excluding all others though of a nearer degree who are not of the blood."

In *Smith* v. *Smith*, 4 R. I. 1, the statute of descents of this State and the relation of that to the section as to ancestral estates is considered at length and with great research and thoroughness. It was held that the ancestral clause did not make a distinct and independent provision for the descent of ancestral estates, but that it was a proviso only to the canons of the statute and that degrees of kindred under that clause are to be reckoned according to the canons. See, also, *Pierce* v. *Pierce*, 14 R. I. 514; *Jenks* v. *Steere*, 23 R. I. 160, 162; *Dexter* v. *Dexter*, 4 Mason, 302, 306, and *Cole* v. *Batley*, *supra*.

Under these canons of descent, as Ellen O'Connor died without children and left neither father nor mother, her surviving, then the real estate as to which she died intestate "excepting as provided in Section 6" would go to her

brothers and sisters" "and their descendants or such of them as there be" as her heirs at law; that is to say, her brother, Timothy, her three nephews, her six nieces, a grand-nephew and two grandnieces, the last twelve mentioned persons taking by way of representation as the descendants of deceased brothers and sisters of said Ellen, were at least her heirs at law of the ancestral real estate of which she died seized and possessed, unless some or all of them are excluded as not "of the blood" of Patrick O'Connor.

As to these questions there is no apparent controversy between the parties to this suit,   While, therefore, they may be regarded as agreeing that in this case the intestate under Section 6 is Ellen O'Connor, the person from whom the estate in question came is Patrick O'Connor and "the kin next to" said Ellen O'Connor are to be reckoned according to the canons of descent as stated in Section 1, Chapter 316 of the General Laws of 1909, they disagree in determining who of the kin next to Ellen O'Connor are "of the blood" of Patrick O'Connor. The complainants aver that the words "of the blood" mean having any of the blood, that is, one who has descended, however remotely, from the same pair as the person whose blood is sought, and more specifi-cally it means A. is "of the blood" of B. if A. is the brother or sister or half brother or half sister of B., and that under such interpretation the complainants, who claim in their own right, are of the blood of Patrick O'Connor, as well as the son, Charles M. O'Connor, the respondent.

The respondents, on the other hand, claim that "to be of the blood of a person in its primary and usual sense is to be in the line of descent from that person;" that the com-plainants are not of the blood of Patrick O'Connor as de-scendants, although of the same blood with him through some common ancestor; that under this restricted interpretation he, the respondent, is the only person "of the kin next to" Ellen O'Connor "of the blood" of Patrick O'Connor.

The following cited cases tend to show that the claim of the respondents is not well founded.   In *Smith* v. *Smith*,

*supra,* one L. S. died intestate without issue, leaving an estate which came to her by descent from a deceased brother. Held that the same passed in equal shares to her mother, brothers and sisters, they being by the canons established by the statute of descents of the same degree of kindred to the intestate. See, also, *Daboll & Johnson* v. *Field,* 9 R. I. 266 and *Norris* v. *Potter, supra. Dexter* v. *Dexter, supra* (1826), was a case arising under the Rhode Island statute of descents. M. D. died intestate without children, leaving real estate which had come to him from his brother J. by descent. His next of kin were first cousins and second cousins, descendants of uncles and aunts of the intestate. The first cousins claimed the estate to the exclusion of the second cousins, but Judge Story held that by virtue of the right of representation under the statute all the cousins were entitled to share in the estate. In *Cole* v. *Batley, supra,* a woman had died intestate and unmarried, leaving a maternal grandfather and two uncles and three aunts, brothers and sisters of her mother. The intestate estate was derived by descent from her mother who had derived it by descent from her mother, the wife of said grandfather. The question was whether the grandfather took to the exclusion of the uncles and aunts under the statute of descents of Rhode Island, and the court held that the grandfather did so take. In his opinion Judge Curtis, in considering who are "of the blood" discusses the very question raised by the respondent. He says: "It was held in *Gardner* v. *Collins,* that the expression, of the blood of another, in this statute, includes all who have any of the blood of that other. And it is well settled that two persons are of the same blood, in part or in whole, who are descended from the same pair. If wholly descended from the same pair, as brothers and sisters having the same father and mother, they are wholly of the same blood; if they have different fathers and the same mother they are partly of the same blood, because they are descended from the same pair, namely, their maternal grandfather and grandmother. It

follows that a father and daughter are partly of the same blood, for both are descended from the same pair, namely, the parents of the father. It is insisted, however, that in this statute, the words 'of the blood of the person from whom such estate came' include only the descendants of that person. If this question were raised for the first time I do not think I could so construe these words, for it is not their natural meaning, and would give to this clause of the statute a far more restricted meaning than I think belongs to it. But in truth it was decided in *Gardner* v. *Collins*. In that case, the intestate was Mary C. Gardner. The estate in question came to her from her brothers. Her half brothers claimed and recovered, as being of the blood of their half brothers from whom the estate came to the intestate. Of course they were not descended from those from whom the estate came." See, also, *Denaplaine* v. *Jones*, 3 Hal. (N. J.) 340 and *Miller* v. *Speer*, 38 N. J. Eq. 567.

These cases clearly show that the claim that to be of the blood of a person means to be in the line of descent from that person is not correct, although not unfrequently it may happen to be the case that the descendants of such person are under the canons of descent the "kin next to" the intestate "of the blood" of such person.

The respondent cites some Rhode Island cases showing this to be the fact. They are for the most part cases where the estate came to the intestate from a parent or grandparent. In such cases it might be expected that the "next of kin" of the intestate "of the blood" of the person from whom the estate came would prove to be the same persons as the descendants of such person. This is true in *Tillinghast* v. *Coggeshall*, 7 R. I. 383; *Pierce* v. *Pierce, supra,* and *Whipple* v. *Latrobe*, 20 R. I. 508. The respondent points out, however, that in *Smith* v. *Smith, supra, Daboll & Johnson* v. *Field, supra,* and *Morris* v. *Potter, supra,* the ancestral estate went to others than descendants of the ancestor because the ancestor left no descendants. But if his claim be correct, then in case of there being no descendants there

would be a failure of the next of kin of the intestate of the blood of such person.   He cites no cases directly upholding his claim.   In our opinion also he gives an unwarranted interpretation to the quotation from the opinion in *Gardner* v. *Collins, supra,* on page 92, as follows:   "We think then. that in case of a gift or devise the statute stops at the immediate donor or devisor and ascends no higher for blood" and the similar quotation on page 94.   The court was considering the question of whether the words "came by descent" are limited to an immediate descent or included a descent mediately from a remote ancestor.   As already pointed out the court held these words to be limited to *immediate*  descent, and in the quotation said in effect and no more than this, "the immediate donor or devisor" or ancestor in title (and not some remote donor, devisor or ancestor in title) is the person of whose blood the "kin next to" the intestate must be; for in that very case in order to determine who were "of the blood" of the person from whom the estate came the court as to part of the estate went back to the parents of such person and as to another portion of the estate to her grandparents.

In the present case had the father of both Ellen O'Connor and Patrick O'Connor survived her, as the statute then was, her estate would have gone, in accordance with the decision in *Morris* v. *Potter, supra,* to her father, notwithstanding Patrick left a son?   This would have been so, because, first, under the general canons of descent the father is one degree nearer in the matter of inheritance than the brothers and sisters of the intestate and their descendants; and, second, the father is "of the blood" of his own son.   There being no father surviving, those inheriting in the next degree under the canons (there being no mother living) are the brothers and sisters of the intestate and their descendants in so far as they are "of the blood" of a deceased brother.   But it has been uniformly held under this statute relating to ancestral estates that brothers and sisters and their descendants are "of the blood" of the deceased brother or sister. '

We are therefore of the opinion in the present case that the complainants, who are suing in their own right, are seized in fee of three undivided fourth parts of the real estate described in the bill and that the respondent, Charles M. O'Connor, in his own right is seized of the remaining undivided fourth part of said estate.

The question certified to this court must be, therefore, and is, answered in the negative.

The papers in the case with our decision certified thereon are sent back to the Superior Court for further proceedings.

*Comstock & Canning, Henry C. Hart*, for complainants.
*Edward A. Stockwell*, for respondents.