LOUISA F. CLARK AND ANOTHER *vs.* SAMUEL W. SHAILER AND ANOTHER.

Real estate was devised by *A* to his daughter *B*. On her death it descended to her son *C*. *C* died intestate and without issue, and without brothers or sisters, or their representatives. Held that the estate had lost its character as ancestral estate, and descended to *C's* next of kin, though not of the blood of *A*, from whom the estate originally came.

The "ancestor" intended by the statute with regard to the distribution of ancestral estate, is the one from whom the estate immediately, and not the one from it remotely, descended.

EJECTMENT; brought to the Superior Court in Middlesex County. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*L. H. Bristol*, for the plaintiffs.

*A. B. Calef*, for the defendants.

PARDEE, J.   This action of disseizin was brought to the Superior Court for Middlesex County, at the September term, 1877, and by that court reserved for the advice of this court as to what judgment shall be rendered therein.

Aaron Brainard died in 1849, leaving one daughter, Mary Ann Dickinson, the wife of Charles A. T. Dickinson, and one son, Charles L. Brainard; by his will he devised the demanded premises to his daughter; she died in 1852, intestate, seized of the premises, leaving as issue of her marriage two children, Ann G. Dickinson and Aaron B. Dickinson; the said Ann died in July, 1863, unmarried, childless, intestate, and seized of the premises, which upon her death vested in the said Aaron B. Dickinson, as her brother and sole heir at law; Aaron B. Dickinson died in December, 1863, seized of the premises, of full age, intestate, leaving neither widow, child, grandchild, brother, sister, nor descendants of any brother or sister; his father, Charles A. T. Dickinson, and his cousin, Louisa F. Clark, the plaintiff, survived him; after the payment of his debts there remained of the estate of Aaron B. Dickinson for distribution several pieces of land which had descended to him from his mother; one-half of his real estate was distributed to Louisa F. Clark, the plaintiff, as ancestral estate; the other half, including the demanded premises, was distributed to his father, Charles A. T. Dickinson, as his heir at law; and the father died in 1876, leaving a will, by which he devised a life estate in the demanded premises to his wife.

Charles L. Brainard, son of Mary Ann and Charles A. T. Dickinson, died prior to the death of Aaron B. Dickinson, leaving surviving him Louisa F. Clark, the plaintiff, his only child and sole heir at law.   Her co-plaintiff is her husband.

The defendants are in possession of the demanded premises, claiming title thereto under Charles A. T. Dickinson, and refuse to surrender them.

The law of descents in force at the death of Aaron B. Dickinson may be found in the General Statutes, Revision of 1866, page 415, section 59, and that part applicable to the present question is as follows:—"All the real estate of the intestate, which came to him by descent, gift or devise from his parent, ancestor or other kindred, shall belong equally to the brothers and sisters of the intestate, and those who legally represent them, of the blood of the person or ancestor from whom such estate came or descended; and in case there be no brothers and sisters or legal representatives as aforesaid, then equally to the children of such person or ancestor and those who legally represent them; and if there be no such children or representatives, then equally to the brothers and sisters of such person or ancestor and those who legally represent them; and if there be none such, then it shall be set off and divided in the same manner as other real estate."

The plaintiff, Louisa F. Clark, insists that the law looks to the origin of the title in the first purchaser of the estate, namely, Aaron Brainard, and that his blood is to inherit it regardless of the intermediate devolution by descent or devise; that Aaron Brainard is the *ancestor* from whom Aaron B. Dickinson inherited; and that, being the sole surviving representative of the children of Aaron Brainard, she inherits it.

The defendants insist that the estate passed immediately and directly from Ann G. Dickinson to her brother Aaron B. Dickinson; and that upon his death intestate, unmarried, leaving no widow, child, grandchild, brother, sister, or child of any brother or sister, it passed to his father, Charles A. T. Dickinson, his next of kin and sole heir at law, in the same manner as other real estate not ancestral.

In *Buckingham* v. *Jacques*, 37 Conn., 402, certain real estate belonged in fee in the year 1825 to Samuel Burr, who died in that year leaving all his estate to his three daughters, Lucretia Weeks, Clarissa Ells and Abigail Nichols. Lucretia

Weeks acquired by conveyance the shares of the two others, and afterwards died, leaving one daughter, Ann, who died leaving a son, Everitt Weeks, who soon after died without issue.   Clarissa Ells died, leaving one daughter, who died without issue.   Abigail Nichols died, leaving one daughter, Georgiana A. Buckingham, who with her husband was the plaintiff in the case.   The land in question was inherited by Ann Weeks from her mother Lucretia Weeks, and from Ann Weeks it descended to her son, who died intestate, and, as before stated, without issue.   The land in question being ancestral estate, the question was whether, under the statute with regard to the distribution of ancestral estate, Ann Weeks, the nearer ancestor, or Lucretia Weeks, the remoter ancestor, was to be regarded as the ancestor whose " brothers and sisters or their legal representatives " were to take the property; the plaintiff Georgiana being the sole representative of the remoter ancestor, and the defendant having acquired by conveyance the rights of the representatives of the nearer ancestor.   Judge SEYMOUR, in giving the opinion of the court, says:—" The intestate Everitt Weeks died in 1840, unmarried, without issue, and without brothers or sisters, or representatives of them.   The real estate in controversy, situate in Bridgeport, was owned by him in fee at the time of his death.   He inherited it from his mother Ann, and she inherited it from her mother Lucretia.   On his death his father, being next of kin to his son, and claiming as his heir, conveyed the property to the defendant, who is now in possession.   The plaintiff, Mrs. Buckingham, claims that on the death of Everitt Weeks the title vested in her.   She is the daughter and only surviving representative of Abigail, a sister of the said Lucretia.   The whole question between the parties resolves itself into this—from whom, within the meaning of the statute, did the estate come by descent to the intestate Everitt Weeks?   The plaintiff says it came to him from his grandmother Lucretia, and if it did, then it now belongs by the express words of the statute to Mrs. Buckingham, as the representative of her mother, sister of Lucretia.   The defendant says it came to the intestate from his mother, and if it

did, then by the express words of the statute, there being no brothers or sisters of her or representatives of them, the estate is to be set off and divided in the same manner as other estate not ancestral. It is clear that the statute provides only for the relatives of the one ancestor from whom the estate came. It makes no provision for the relatives of, more than one such ancestor, and either the mother is that ancestor in exclusion of the grandmother, or the grandmother is that ancestor in exclusion of the mother; so that if we decide that the estate came from the grandmother we do necessarily decide that it did not, in the sense of those words as used in the statute, come from the mother; and the main difficuty in the question which we are called on to decide arises from the circumstance that, in a certain sense, the estate came to the intestate from his mother, and in a certain sense also from his grandmother, and we are called upon to say in which of the two senses the words are used in the statute. Now the intestate certainly inherited this estate from his mother. He makes title to it as her heir. It is not according to the natural use of language to say that he inherited it from his grandmother or that he is her heir. It is true that in a general sense the property came to him from his grandmother; it came so remotely, but proximately it came from the mother. It came from the grandmother by an intermediate descent, but from the mother the descent is immediate and direct, by one descent and not by several descents. We think the natural meaning of the words of the statute requires us to look to the immediate descent and immediate ancestor, rather than to a remote descent and a remote ancestor."

Herein this court determined that the statute with regard to the distribution of ancestral estate refers to the immediate and not the remote ancestor; and this must dictate the answer to be given to the Superior Court in the case before us.

We may add that the Supreme Court of the United States, speaking through Story, J., placed a like construction upon a similar statute in Rhode Island; and that a like statute in Ohio has received the same interpretation. *Gardner* v. *Col-*

*lins*, 2 Peters, 58; *Curren* v. *Taylor*, 19 Ohio, 36; *Lessee of Prickett* v. *Parker*, 3 Ohio S. R., 394.

We advise the Superior Court to render judgment for the defendants.

In this opinion the other judges concurred.