## West et al. vs. Williams et al.

A devise to A. for life, with remainder to B., does not lapse by the death of A., in the lifetime of the testator, but vests immediately in B. on the death of the testator.

Where lands are devised by a maternal ancestor, the devisee, though he acquires the land by purchase, holds them as an ancestral estate *ex parte materna;* and, upon his death, without issue, those only of his heirs who are of the blood of such maternal ancestor, can inherit. *Kelly's Heirs et al. vs. McGuire et al., ante.*

Where lands and personal estate are both devised, charged with legacies, the personal estate must first be exhausted in the payment of the legacies, before resort can be had to the land.

A minor son, possessed of real estate, dies without issue; the father enters upon the land, claiming as heir to the son, and makes valuable and lasting improvements: he is entitled, in equity, to set off such improvements against the rents and profits.

*Cross Appeals from the Pulaski Circuit Court in Chancery.*

Hon. WM. H. FIELD, Circuit Judge.

PIKE & CUMMINS, for the appellants, West et al.   The first question in this case, is, whether the intestate, Eugene L. H. Williams, took, at the death of the testatrix, the share devised to his mother, Henry E. Williams, for life; or whether that legacy of the *residuum* lapsed.

The general principle as to lapsing is, that wills not taking effect until the testator's death, can communicate no benefit to persons who previously die.   1 *Jarman on Wills*, 293.   But this rule does not extend to a legacy given, over after the death of the first legatee ; *for, in such case, the legatee, in remainder, is entitled to have it immediately.   Prescott, adm. vs. Prescott,* 7 *Metcalf* 141; *Doe vs. Roach,* 5 *M. & S.* 482; *Hopkins vs. Hopkins,* 2 *Atk.* 581; 2 *Jarman* 671; 2 *Vern.* 378; 2 *Atk.* 320; 2 *Keene* 555.

It is clear, therefore, that the lands in Arkansas belonged to the heirs of Mrs. *Williams'* child.   Who those heirs are, is to be ascertained by the laws of Arkansas.   The estate came to the child from Mrs. *Taylor,* its grandmother; because, the child did not take thro' its mother at all—but by *purchase,* and not by descent.

When legal terms are used, they are to be understood in a legal sense; technically, the words "purchase," and "on the part of," used in a statute, are to be construed as at common law.   *Barnits, Lessee vs. Casey,* 7 *Cranch* 468; *Hall vs. Jacobs et al.,* 4 *Harr. & John.* 254.

*Purchase,* taken in its most extensive sense, is thus defined by LYTTLETON: "The possession of land, &c., which a man hath by his own act or agreement; contradistinguished from acquisition *by right of blood; and includes every other mode of coming to an estate.*" 2 *Bla. Com.* 241.

The intestate in this case, taking by devise from his maternal

684      CASES IN THE SUPREME COURT

West et al. vs. Williams et al.      [JANUARY

grandmother, took by *purchase*. When the estate vested in him, his mother was dead. He dies, possessed of the land, in fee. To whom did it go on his death?

The counsel contended that the complainants, who are the heirs at law of Mrs. E. M. O. Taylor, must take the land, to the exclusion of the other heirs (the defendants) of Mrs. Henry E. Williams, not of the blood of Mrs. Taylor, and after quoting and commenting upon the several sections of the statute of descents and distributions, cited *Gardner vs. Collins*, 2 *Peters* 58; 1 *Lomax* 588; 2 *Bla. Com.* 221; *Hall vs. Jacobs*, 4 *Harr. & John.* 256; 2 *Hilliard on Real Estate, chap.* 77, *sec.* 68; 4 *Kent* 405; *Torray vs. Shaw*, 3 *Edw.* 360; *Conn. Stato*, 204, 5 *id.* 34, 5; *Lewis vs. Gorman*, 5 *Barr.* 164; *Walker's adm. vs. Smith*, 3 *Yeates* 480; *Shippen vs. Izard*, 1 *Serg. & Rawle* 226; *Bevan vs. Taylor*, 7 *Serg. & Rawle* 397; *Maffit vs. Clark*, 6 *Watts & Serg.* 253; *Stewart's Lessee vs. Jones*, 8 *Gill & John.* 1; *Burgwyn vs. Devereaux*, 1 *Ire.* 583; *Pipkin vs. Coor*, 1 *Law Repos.* 104; 2 *Murph.* 231; *Ham vs. Martin*, 1 *Hawks* 423; *Butler vs. King*, 2 *Yerg.* 116.

It seems to us that, with the light which the law in other States sheds upon the subject, there ought to be no great difficulty in construing our own statute. "If the estate *come by the mother*, it shall descend *to the mother and her heirs*," is the language of the statute. The 29th section then explains the words "come *by* the mother," to mean the same thing as the words "*come on the part of the mother*," and provides that the expression shall be construed to include every case where the inheritance shall have come to the intestate by gift, devise, or descent, from the parent referred to, or from any relative of the blood of such parent.

The common law followed invariably the line of the blood. It is not presumed that a statute is intended to change the common law any further than it does so expressly: and, in the 12th section, the Legislature, by excluding relatives of the half-blood where the inheritance comes to the *propositus* by gift, devise or descent, from *any* one of his ancestors, and providing that in every such case, all who are not of the blood *of that ancestor* shall be ex-

cluded, make their meaning and intention, in the other sections, perfectly apparent. Section 12 shows, evidently that they meant to carry out the principle that, in all cases where an estate comes to the intestate, from a particular ancestor, only such of his next of kin as are of the blood of *that* ancestor shall take.

The *statutory* definition of the meaning of the expression "come on the part of the father," or "mother," is only the interpretation which the courts would have given to it, on general principles, and in carrying out the leading object of the law under the controlling intention of the Legislature, in the same manner as they construe the word "children" in a devise, to include grand children, which is now well settled. *Ewing vs. Handley*, 4 *Litt.* 349; *Drayton vs. Drayton*, 1 *Desau.* 327; *Deveaux vs. Barnwell*, 1 *id.* 499; *Izard vs. Izard*, 2 *Desau.* 303; *Tier vs. Pennell*, 1 *Edw.* 354; *Marsh vs. Hague*, *id.* 174; *Smith's case*, 2 *Desau.* 123, *n.*; *Cooke vs. Brookeing*, 2 *Vern.* 106; *Reeves vs. Bryer*, 4 *Ves.* 698; *Royle vs. Hamilton*, *id.* 439; *Mowatt vs Carow*, 7 *Paige* 328; *Radcliff vs. Buckley*, 10 *Ves.* 195; *Earl of Oxford vs. Churchill*, 3 *Ves. & Bea.* 69.

Is Dr. Williams entitled to have the legacies reimbursed to him? In other words, were they charged on the land? His son was legatee of one-third of the negroes, all the land, and the *residue* of all other property. "Out of the estate," so devised, these legacies were payable.

Chancellor KENT said, in *Livingston vs. Newkirk*, 3 *J. C. R.* 319: "It is too well settled to be questioned, that the *personal* estate is to be *first* applied to the payment of debts and legacies; and that a mere *charge* on the land will not exonerate the personal estate, nor anything short of express words, or plain intent in the will of the testator." That this is correct, and that the personal estate, where real and personal estates are *jointly* charged with the payment of debts or legacies, is to be *first* applied, and the real estate only when the personal estate falls short, is undeniable. See, fully in point, *Duke of Ancaster vs. Mayer*, 1 *Bro. C. C.* 454; *Lawson vs. Hudson*, *id.* 58; *Burton vs. Knowlton*, 3 *Ves.*

686                    CASES IN THE SUPREME COURT

West et al. vs. Williams et al.                    [JANUARY

*Jr.* 108; *Brummel vs. Prothero, id.* 113; *Tait vs. Lord North-wick,* 4 *Ves.* 823; *Hartley vs. Hurle,* 5 *id.* 546; *Watson vs. Brick-wood,* 9 *id.* 453; *Hancock vs. Abbey,* 11 *id.* 188; *Webb vs. Jones,* 1 *Cox* 245; *Gray vs. Minnethorpe,* 3 *Ves.* 103; *Bootle vs. Blun-dell,* 1 *Meriv.* 227; *Walker vs. Jackson,* 2 *Atk.* 624; *Kidney vs. Coussmaker,* 1 *Ves. Jr.* 436; *Hamilton vs. Worley,* 2 *id.* 62; *Git-tins vs. Steele,* 1 *Swanst.* 28; *Pitt vs. Raymond,* cited 2 *Atk.* 434; *Chaplin vs. Chaplin,* 3 *P. Wms.* 364; *Galton vs. Hancock,* 2 *Atk.* 424; *Wride vs. Clark, Dick.* 372; *Davies vs. Topp,* 2 *Bro. C. C.* 259, *n.; Mannin vs. Spooner,* 3 *Ves. Jr.* 114; *Harwood vs. Og-tander,* 6 *Ves.* 199; *S. C.* 8; *id.* 106; *Milnes vs. Slater,* 8 *Ves.* 295; *Minor vs. Wicksteed,* 3 *Bro. C. C.* 627; *Austen vs. Halsey,* 6 *Ves.* 475; *Nyssen vs. Gretton,* 2 *Yo. & Coll.* 222; *Davis vs. Gardner,* 2 *P. Wms.* 188; *Parker vs. Fearnley,* 2 *Sim. & Stu.* 592; *Dolman vs. Smith, Pre. Ch.* 456, cited 1 *Roper on Leg.* 696; *Philips vs. Philips,* 2 *Bro. C. C.* 274; *Fitzgerald vs. Field,* 1 *Russ.* 428; *Halsewood vs. Pope,* 3 *P. Wms.* 324; *Lord Inchi-quin vs. French, Amb.* 33; *Samwell vs. Wake,* 1 *Bro. C. C.* 144; *Rhodes vs. Rudge,* 1 *Sim.* 79; *McClelland vs. Shaw,* 2 *Sch. & Lef.* 538; *Walker vs. Hardwick,* 1 *Myl. & K.* 396; *Roberts vs. Roberts,* 13 *Sim.* 337; *Brydges vs. Phillips,* 6 *Ves.* 567; *Ald-ridge vs. Lord Wallscourt,* 1 *Ball & Beatt.* 312; *Tower vs. Lord Rous,* 18 *Ves.* 132; *Seaver vs. Lewis,* 14 *Mass.* 83; *Lupton vs. Lupton,* 2 *J. C. R.* 614; *Tole vs. Hardy,* 6 *Cowen* 333; *Wright vs. Denn,* 10 *Wheat.* 204; *Gridley vs. Andrews,* 8 *Conn.* 1; *Down-man vs. Rust,* 6 *Rand.* 587.

FOWLER, for Williams et al. By the the first section of our statute of descents and distributions, the estate of *Eugene,* so dying intestate, is giving *absolutely* to the *father.* How far it is qualified, by other sections of the same act, is the question here, and produces the great difficulty in its construction.

By the 10th section, where the estate is a *new acquisition,* it is made to ascend to the *father during his life,* &c. Gen. *Wil-liams,* my client in this case, insists *first,* that the estate *ascended*

to him in fee, on the death of his son, under the *first section* of the statute; and that this section should not be trammelled by subsequent sections of the staute of doubtful bearing.  *But*, if not his, in fee, that under the circumstances of the case, and the heavy legacies charged upon it, that under the 10th section, it became a *new acquisition* in the hands of his son; and ascended to the *father* for his lifetime.  And that such legacies were so *charged* upon the *estate*, and so *changed* its nature and condition, he refers to 1 *Roper on Leg.* (*1st Am. Ed.* 1829,) *p.* 448 *to* 454; 2 *Vern. Rep.* 708; *Trott vs Vernon*, 3 *Brown Ch. Rep.* 731, *Minor vs. Wicksteed.*

If these positions be erroneous, he insists that a proper construction of the 10th and 22d sections taken together, (if the latter really applies to the former, and it fails to quote language used in the former,) is that, on the death of *Eugene*, his *estate* having come by the *mother*, or rather by his grandfather, *Lewis C. Taylor*, (which the bill admits) must ascend to the heirs of his *grandfather*, and not those of his grandmother, as the estate clearly came by the grandfather.

And the *bill* having admitted this fact, the complainants are bound by it.

Or, under the *same sections*, whether the estate came to *Eugene* by *devise* or by *descent*, that it came to him "*by the mother*"—his own mother, *Henry E. Williams*—and should ascend to *her heirs;* which *heirs* are *both the complainants and the defendants;* and the estate should be divided *amongst them all.*

*But*, if none of the above constructions be the true canons of descent, under our statue, it is insisted, on the part of *Williams* and his co-defendants, that *Eugene* did *not* take, under his grandmother's will, as *devisee*, but *inherited* the *land* as her sole *heir at law.*

For, where *land* is *devised* to the *heir at law* in the same estate, which he would take *as heir*, the devise is *inoperative*, and the *heir* takes by *descent* as the *better title.*    2 *Dev.* (*N. C. Law Rep.*) 323; *Hoyle et al. vs. Stone.*

And, if *Eugene* took by *descent*, his title came by *his mother*, *through her blood*—for, without her, he could not have inherited at all—and his estate would ascend to the *heirs of his mother*.

And, if the court should deem this a *casus omissus* in our statute, and unprovided for *specifically*, the 13*th section* provides that the estate "shall descend according to the course of the common law."

And according to the common law, the *heirs at law* of *Lewis C. Taylor*, the *first purchaser*, must *inherit*. See 2 *Black. Com.*, *p.* 220.

In any event, *Williams*, as a trustee, in possession under the will, or acting as guardian by nature for his infant son, or honestly believing the land was his own, is entitled clearly in this proceeding to be re-imbursed to the extent of his expenditures, for *permanant* improvements, and for the *lagacies* which he paid *with his own money*. The complainants seeking equity, are bound to act equitably.

Mr. Justice Scott delivered the opinion of the Court.

West and others exhibited their bill in chancery, against Williams and others, for the recovery of a tract of land, and the rents, and profits of the same, from the death of Eugene L. H. Williams.

The land in controversy, was originally owned by Lewis C. Taylor, who, by his last will and testament, devised it in fee to his wife, Mrs. Elizabeth M. O. Taylor. During her widowhood, Mrs. Taylor, by will, devised as follows: To her brother, William Overton, one-third of her negroes and $1000 in money; to her sister, Mrs. West, one-third of her negroes for life, remainder to her children; to her daughter, Mrs. Henry E. Williams, all the residue of her estate, including a tract of land in Arkansas (which is the land in controversy) for life, remainder to her children, with a proviso, that if any such child come of age, or married in their mother's (Mrs. Williams) life time, its share should be then delivered to it. In case of Mrs. Williams' death, without issue,

living *at her death*, the property devised to her to go over to Overton and Mrs. West. If any of Mrs. Williams' children coming of age, or marrying, and receiving their share, should die in their mother's life time, its, or their share, "to fall back into the mass," and go to Overton and Mrs. West. The clause carrying the property over, on the death of Mrs. Williams, without issue, provides that the whole of her share shall go over, "saving such as may have been allotted off to such of the children as before directed."

Mrs. Williams died in the life-time of the testatrix, leaving but one child, a son, Eugene L. H. Williams, who died in infancy, without issue, after the death of the testatrix.

Mrs. Taylor also devised to certain nieces and nephews, legacies to be paid in money to the amount of $1.300 in the aggregate. Then follows item 5th of the will, in these words: "The foregoing cash legacies and bequests, shall be paid by my son-in-law, Joseph R. Williams, out of the estate hereinafter bequeathed and devised to my beloved daughter, Henry E. Williams, wife of said Joseph R. Williams, and her children, with the accompanying limitation over in certain contingencies, as such estate hereinafter bequeathed to my said daughter and children, is to, and is hereby declared, shall be, and remain in, the care and under the management of him, the said Joseph R. Williams, free of rent, interest, or hire, so long as, by limitation aforesaid, said estate shall remain in the use and possession of my said daughter, Henry E. Williams." And the 6th item of the will, which gave Mrs. Williams all the residue of the estate — that is, one-third of the negroes, all the land, and all other property, real, personal, and mixed, except a carriage and horses, declares that she is "the same to have and to hold, *subject to the legacies aforesaid*, separately to herself and her children," &c.

Joseph R. Williams, and William Overton were named as executors; and, by a codicil, $1.000 were given to Sarah B. Wilkins, a sister of the testatrix, to "be paid," in the language of the will, "by my son-in-law, Joseph R. Williams, out of the property de-

87BB

vised my daughter, his wife." A copy of the will is made a part of the bill.

The negroes were divided, the other legacies delivered, and the pecuniary legacies paid off as directed by the will; the latter by Joseph R. Williams, out of his own funds.

The will of Mrs. Taylor was executed the 10th of November, 1846, and was admitted to probate in Montgomery county, Tennessee, the 2d of April, 1849. She having died, a short time before, in that State, where Eugene L. H. Williams also died, a month or two after the testatrix. Ever since his death, Joseph R. Williams, his father, has been in possession of the land, and in receipt of the rents and profits. After the death of the testatrix, Joseph R. Williams married Jane T. Wilkins, daughter of Jane Wilkins, vice Taylor, who was a sister of Lewis C. Taylor, the deceased husband of the testatrix.

The complainants are the heirs at law of the testatrix, and the defendants are the heirs at law of Lewis C. Taylor, deceased husband of the testatrix.

Williams, in his answer, also claims the land as heir of his deceased son, Eugene L. H. Williams, and that if not, that it went to the heirs of his deceased wife, (the mother of Eugene), who are both the plaintiffs and the defendants; that is to say, as well the heirs of the testatrix as of her deceased husband, Lewis C. Taylor. He also sets up that if the land should not be decreed to him, the legacies paid by him should be charged upon it, and the land sold to re-imburse him, and that the rents and profits should not be charged against him further back than to the 1st January, 1850; because, under the laws of Tennessee, he has already distributed so much of them as accrued for the unexpired portion of the year 1849, as part of the personal estate of the testatrix. And that against the rents and profits, for which he might be held accountable, all valuable and lasting improvements made upon the land ought to be set off. He also submitted that the charge of the pecuniary legacies, upon the property devised to his son, so changed its nature as to make it a new acquisition and not

ancestral, within the meaning of the statute, and that thus his son was constituted a new stock of descent. He does not, however, in any way, allege, or set up that the personalty, devised along with the land, was *insufficient* to pay off the legacies charged in gross upon the whole estate devised.

The court below decreed the land to the complainants, and that Williams should account to them for the rents and profits, from the 1st day of January, 1850; and directed the master to enquire into, and report the dates when the legacies were paid, the amount of rents and profits, that ought to have been received, the value of permanent and lasting improvements made on the land, with annual rests and interest on both sides. The value of such improvements, and the amount of the legacies paid to be set off against the rents and profits, and that the defendants pay all the costs.

From that decree, both parties appealed to this court.

It is shown, very clearly, by the reasoning, and the authorities cited by counsel on the one side, and is admitted by the counsel on the other, that, under the facts of this case, the legacy of the residuum to Mrs. Henry E. Williams for life, with the limitation over, did not lapse, but immediately upon the death of the testatrix, vested in Eugene L. H. Williams, her grand son. The lands in controversy, then, belong either to all the heirs of the latter, or else to such of them, only, as under the provisions of our statute of descents and distributions are capable of inheriting them from him.

Coming to him by devise from his maternal grandmother, Mrs. Taylor, who had taken them by purchase from her deceased husband, and held them as an ancient fee, they were in his hands, an ancestral estate *ex parte materna*, within the meaning of the 10th section of our statute, explained and enlarged by the 22d section; and the question is, who of the parties in this controversy, are entitled, under our laws, to inherit these lands from Eugene L. H. Williams, who died intestate, thus seized and possessed of them?

692     CASES IN THE SUPREME COURT

West et al. vs. Williams et al.     [JANUARY

According to the interpretation of the statute in the case of *Kelly et al. vs. McGuire & wife et al.*, decided at the present term, where the whole subject was fully discussed and elaborately considered, it was held that ancestral estates embrace not only descended estates, but also all others, which may have come to the intestate by gift, or devise, from either parent, or from any relative of the blood of either parent, and that, as to all such, it is the manifest intention of the Legislature, upon the death of the intestate, without issue, to preserve them in the line of the blood from whence they come, to the same extent that descended estates. were so preserved at common law.

To carry out this intention, it is obvious, that the same means. must be resorted to, that were used at common law, to make it effectual as to descended estates, and should these fall short in any case, when applied to estates given or devised, then that analogous means must be used.. Hence, the inevitable principle, substantially announced in the case cited, that to be of the blood of the last purchasing ancestor, in the line of the transmitting relative, is as indispensable to enable a collateral to inherit, as heir of the intestate, an ancestral estate which was *given* or *devised* to the intestate, as to be of the blood of the last purchasing ancestor was, according to the principles of the common law, to enable him to inherit, as heir of the intestate, an ancestral estate which had come to the intestate by descent. Consequently, whether an ancestral estate come to the intestate by gift, devise, or by descent, upon the failure of issue, it can be inherited by such of his heirs only as are of the blood of the last purchasing ancestor, in the line of the blood from whence it came, either maternal or paternal, as the case may be. 4 *Kent* 404. And this is in exact harmony with the provisions of the statute in excluding the half-blood and their descendants from inheritances *only* when *these* are *ancestral*, and *they*. not of the blood of the transmitting ancestor.

Upon this ground, not only is Joseph R. Williams, the father of the intestate, excluded from this inheritance, but also all the

next of kin of the intestate on the side of his grandfather, Lewis. C. Taylor; none of them being of the blood of his grandmother,. Mrs. E. M. O. Taylor, from whom the estate came to him, and who held it as purchaser. It is, therefore, only the complainants below,. all of whom are of this blood, that are called to the inheritance in question.

In response to the position of the counsel of Joseph R. Williams,. that inasmuch as the devise was to the same person, who would have taken the estate as heir at law, the devise shall be held inoperative, and the devisee as *in by descent*, it is to be remembered that, although it might be so held, the result would be pre_ cisely the same, because in that case none of his next of kin could have inherited, upon his death without issue, except such *only* as were of the blood of his grandmother, from whom, as representing his mother, he inherited the estate; his grandmother having held it as last purchaser. In that case, however, the result would have been very different, as to future descents from those who, in either case, would inherit from Eugene and die without issue; because, only such of the heirs of such intestate inheriting from Eugene and dying without issue, could be called to the inheritance, as were of the blood of *Eugene's grandmother*, who would still remain the last purchaser in the line of descents; whereas, under the actual state of the case, Eugene, having taken an ancestral estate by devise from his grandmother, is *in* by *purchase*, and thereby becomes himself a stock of descent as to all those who might inherit from those who inherited from him, it being the rule of the American law, as to such future descents of ancestral estates, to stop at the last purchaser, and ascend no higher for blood. *Gardner vs. Collins*, 2 *Peters Rep.* 58; 2 *Hilliard*, chap. 77, sec. 64; 4 *Kent* 405.

And, in addition to the reasons already given, this rule would peremptorily exclude all the next of kin of the intestate, who are of the blood of Lewis C. Taylor, even had he (Lewis) been some relative, either paternal or maternal, of Mrs. Taylor, instead of being her husband, and of no kin to her at all—so far as appears

694 CASES IN THE SUPREME COURT

West et al. vs. Williams et al. [JANUARY]

upon this record—because, although he had been such a relative, and had devised the land to Mrs. Taylor, as he did, in calling the next of kin of Eugene to the inheritance left by his failure of issue, the law would have gone *no higher up* the ancestral line for blood, than to the *first* purchaser of the estate, who, in that case, also, would have been Mrs. Taylor.

According to the actual state of case, however, as it appears upon this record, the estate, when in Mrs. Taylor's hands, was not an ancestral estate at all, but a new acquisition, within the definition of such estates given in the case of *Kelly et al. vs. McGuire & wife et al.;* because, she held it by devise from her husband, Lewis C. Taylor, who, so far as this record shows, was a stranger to her blood, both paternal and maternal; but, in the hands of Eugene, it was an ancestral estate, *ex parte materna;* because it had come to him from his maternal grandmother. And this being so, in accordance with the ancient maxim of the common law, "that he who would have been heir to the father of the deceased, and of course to the mother, or any other real or supposed *purchasing ancestor*, shall also be heir to the son"—a maxim that will hold universally, except in the case of a brother or a sister of the half-blood. 1 *Black. Com.* 223; 1 *Lomax on Real Property*, 589. None of the heirs of Eugene could inherit the lands from him, who would not also have been heirs of Mrs. Taylor, his grandmother, and these, in this case, are those who were the complainants below, to whom the Circuit Court of Pulaski county correctly decreed them.

There being, in our opinion, nothing in the position taken in behalf of Joseph R. Williams, that the legacies, charged upon the whole estate, devised, real and personal, so changed the nature of the real estate as to make it, in the hands of the intestate, a new acquisition, within the meaning of our statute : And there being no pretence that the personal estate was insufficient to pay the legacies charged in gross, upon the whole estate devised, it is perfectly clear, in the light of the immense array of authority, cited to the point, that so much of the decree as directed that the

pecuniary legacies paid by Joseph R. Williams should be set off against the rents and profits of the land since the first day of January, 1850, for which he was properly held accountable to the plaintiffs below, is erroneous, and must be reversed. The residue of the decree is equitable, and ought to be affirmed and executed. The cause will, therefore, be remanded to the Chancery Court for Pulaski county, with instructions to this effect.