FREDERICK FRELINGHUYSEN, *et al.,* executors, *vs.* NEW YORK LIFE INSURANCE & TRUST CO. *et al.*

JULY 12, 1910.

PRESENT:   Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Construction of Will and Codicils.*

In construing a will and codicil, or codicils, they are to be taken and construed together, in connection with each other, as parts of one and the same instrument, and the codicils shall not be taken to vary or modify the will unless such was the manifest intention of the testator.   If two dispositions can be reconciled, it should be done; if they are irreconcilable, the latter should prevail.

As there can be but one residue, a testator, by bequeathing the residue of his estate in different codicils, must have had the same property in mind; and it is evident that, at the time of executing each codicil, he intended to make it the residuary clause.   So, where in one case testator provided that the residue should be transferred directly over to the residuary legatees, thus vesting the property in them absolutely, and in the later codicil devising them merely a life estate with remainder over to their children, the provisions of the codicils can not be reconciled, and the latter should control, as it effectively disposes of the residue and shows an intent contrary to that manifested in the previous one.

(2)   *Bequest to Trustees of Fund With Remainder Over, Does not Lapse, When.*

Where there was a devise of a fund in trust to apply the income to X. during her life, and upon her death to pay over the principal to the daughters of testator, and X. predeceased testator, the gift does not lapse, but the trust becomes a naked one to pay over the legacy to the daughters directly.

(3)   *Payment of Legacies.   Interest.*

While an executor can not be compelled to pay legacies before the expiration of one year from the death of testator, such payment may be made prior to that time if the executor so elects, and is expressly authorized under Gen. Laws, 1909, cap. 318, § 11.   If a legacy is paid before the time required, the income thereof from the time of payment goes to the legatee.

(4)  *Income for Life.  Interest.*

A bequest of the income of a fund to a legatee for life bears interest from the death of testator.

BILL IN EQUITY for the construction of will, certified to Supreme Court.

JOHNSON, J.  This is a bill in equity brought in the Superior Court in Newport county, for the construction of the will of John N. A. Griswold, late of the city and county of Newport, and State of Rhode Island, deceased.  The complainants are the executors of the will, and the bill is brought against the New York Life Insurance and Trust Company, a corporation created by law and located and doing business in the city of New York, named in said will of John N. A. Griswold as trustee; Minnie Griswold Forbes, of Morristown, New Jersey, Florence Griswold Cross, of London, England; Edward Henshaw, Anna MacConnell, of New York city, New York; Mary B. Derby, of the city and county of Newport, in the State of Rhode Island; Gordon Forbes, of said Morristown; and Howell Forbes, and John M. Forbes, Junior, minors, of said Morristown; and Dorothy Cross, Graham Odo Cross and Robert Odo Croix Cross, all minors, of London, England.

The case is now before this court by certification under Gen. Laws, 1909, cap, 289, § 35.

Said bill sets out:  "That John N. A. Griswold, late of the said city of Newport, county of Newport, and State of Rhode Island, died at said Newport on the 13th day of September, A. D. 1909, a resident of said Newport, and leaving a last will and testament with certain codicils thereto, which were duly admitted to probate by the Probate Court of the city of Newport, Rhode Island, by a decree entered on the 11th day of October, A. D. 1909, a copy of which said will and codicils bearing date respectively, as follows:—

" Will executed December 6th, 1890,
" 1.  Codicil executed July 13th, 1891,
" 2.  Codicil executed August 8th, 1892,
" 3.  Codicil executed June 15th, 1898,

"4. Codicil executed February 8th, 1899,
"5. Codicil executed March 25th, 1903,"
is attached to said bill.

The fourth section of the will provides: "I do give, devise, and bequeath to the New York Life Insurance and Trust Company as trustee the sum of $50,000, upon the following trusts and for the following uses and purposes, to keep the same invested and to receive the income and interest thereof and to apply the said income and interest to the use of Julia Tucker and Mary B. Derby (cousins of my wife) in equal shares during their joint natural lives and upon the death of either of them to pay over one equal half of the said principal to the lawful issue of the one so dying and to apply the interest and income of the other half to the use of the survivor during her life and in case the one so dying shall leave no lawful issue her surviving to apply the whole of said interest and income to the use of the survivor during her life and upon the death of the said survivor to pay over the said principal fund or so much thereof as shall then be held in trust to her lawful issue and in case such survivor shall leave no lawful issue her surviving to pay over the said principal to such person or persons as by the laws of the state of New York would be my next of kin if I then died intestate and in such shares and proportions as they would be entitled to under the said laws."

This fourth section of the will was changed by the codicil of August 8, 1892; but said codicil was revoked so far as said fourth section of the will was concerned, and said fourth section was republished and affirmed by the codicil of February 8, 1899.

The fourth section of the fourth codicil to said will, executed on the 8th day of February A. D. 1899, provides as follows:—
"And it is my will that after the payment of my debts provided for in the first section the payment of the legacies provided for in the third section and the payment of the legacy in trust provided for in the fourth section for the benefit of Mary B. Derby, Julia Tucker being dead, and the payment of the legacy to Edward Henshaw provided for in the third section

of this codicil, that all the rest, residue and remainder of my estate both personal and real shall be given devised and bequeathed to my three children in equal shares share and share alike and their heirs and legal representatives and I do therefore accordingly give devise and bequeath one-third part of all the rest residue and remainder of my estate both personal and real of every kind and description and wheresoever situate to each of my three children share and share alike that is to say one-third thereof to Minnie Griswold Forbes wife of John Forbes of Morristown, New Jersey, and her heirs and legal representatives one-third thereof to Florence Griswold Cross wife of H. Odo Cross of London, England, and her heirs and legal representatives and one-third thereof to George Griswold formerly known as Addis McEvers Griswold of Newport, Rhode Island, and his heirs and legal representatives and to the child or children of such of them as shall be dead at the time of my death per stirpes and not per capita; that should any of my children die without issue him or her surviving at the time of my death the share of such child shall be divided between his or her surviving brothers and sisters and descendants of deceased brothers and sisters equally per stirpes and not per capita and if there be no surviving brother or sister or descendant of a deceased brother or sister then the rest residue and remainder shall descend and be distributed in accordance with the laws of the State of New York, for the descent and distribution of the estates of intestates."

The first section of the fifth codicil appoints the nephews of the testator, Frederick Frelinghuysen and George G. Frelinghuysen to be executors of his last will and testament.

The seventh section of the fifth codicil provides as follows: "I do give devise and bequeath to the New York Life Insurance and Trust Company of the City of New York as Trustee the sum of one hundred and fifty thousand dollars upon the following trust and for the following uses and purposes: To keep the same invested and to receive the income and interest thereof and to apply six thousand dollars per annum in equal quarterly instalments of the said income to Jane Emmet Gris-

wold during her natural life in fulfillment of my agreement to make her an annual allowance of that amount during her natural life and to add the balance of the income if any there be to the principal fund and if the annual income from this fund does not amount to six thousand dollars to use a portion of the principal thereof to make the annual payment of six thousand dollars and upon her death to pay over one equal half of the principal to my daughter Minnie Griswold Forbes or her descendants and one equal half of the principal to my daughter Florence Griswold Cross or her descendants and in case either of my said daughters shall have died leaving no lawful issue her surviving to pay the whole of the said principal fund to my surviving daughter or her descendant or descendants and in case both daughters be dead leaving no descendant to pay over the principal to such person or persons as by the laws of the state of New York would be my next of kin and in such shares or portions as they may be entitled to under the said laws."

The eighth section of the fifth codicil provides as follows: "I hereby direct my executors to pay my debts funeral expenses and legacies as directed by my will and the several codicils thereto and to convey transfer set over and deliver to the New York Life Insurance and Trust Company of the City of New York as Trustee all the rest residue and remainder of my estate both personal and real upon the following trust and for the following uses and purposes: To divide the same into two equal parts or portions and to keep the same invested and to receive the income and interest thereof and to apply the said income and interest of one such part or portion to the use of Minnie Griswold Forbes and the income and interest from the other such part or portion to the use of Florence Griswold Cross —my intention being to apply the income and interest from one of the said shares for the use of each of my said children during her natural life—and upon the death of either of my said children without leaving a last will and testament devising bequeathing or disposing of the part or portion held for her to pay over the principal of the share or portion held for such child of mine so dying to her lawful issue per stirpes and not per capita and in case

the child of mine so dying shall leave no lawful issue her surviving to pay over the principal of such share to her surviving sister and if there be no surviving sister then to the descendant or descendants of her sister and if there be no descendant then to pay over the principal of such share to such person or persons as would then by the laws of the State of New York be my next of kin if I then died and in such shares or portions as they would be entitled to under the said laws."

The bill further alleges that the petitioners, Frederick Frelinghuysen and George G. Frelinghuysen, are the executors named in said fifth codicil and have duly qualified and are still acting as such executors.

That the New York Life Insurance and Trust Company, of the city of New York, is the trustee named in said eighth section of said fifth codicil.

That the said Minnie G. Forbes and Florence G. Cross are the two residuary legatees named in the fourth section of the said fourth codicil and are the sole beneficiaries of the trust as set forth in said eighth section of said fifth codicil, and are also the only children surviving said John N. A. Griswold and the beneficiaries under the trust provided for in the fourth section of the will dated the 6th day of December 1890, and the only beneficiaries under the trust provided for in the seventh section of the fifth codicil, dated the twenty-fifth day of March, 1903; and that said Gordon Forbes, Howell Forbes, and John M. Forbes, Junior, are the children and lawful issue of said Minnie Griswold Forbes; and that said Dorothy Cross, Graham Odo Cross, and Robert Odo Croix Cross are the children and lawful issue of said Florence Griswold Cross; and which said minors have a contingent interest under the provisions of the eighth section of the fifth codicil of said will.

That said Edward Henshaw and Anna MacConnell are the other legatees named in said will, and said Mary B. Derby is the beneficiary under the fourth clause of the will as modified by the codicil executed February 8th, A. D. 1899.

That the said George Griswold, named in the fourth section of

said fourth codicil, died on the 23rd day of December, A. D. 1902, without leaving issue him surviving.

That the said Jane Emmett Griswold, named in the seventh section of the fifth codicil, died on the 19th day of January, A. D. 1909, leaving no other issue her surviving than Minnie Griswold Forbes and Florence Griswold Cross.

That a question has arisen as to the construction and proper method of administering said estate and said trust, the said Minnie Griswold Forbes and Florence Griswold Cross contending that the residuary estate should be administered according to the provisions of the fourth section of the fourth codicil, and the said New York Life Insurance and Trust Company contending that the same should be administered according to the provisions of the eighth section of the last codicil.

And the complainants are unwilling to pay over and deliver the said residuary estate either, under the fourth clause of the fourth codicil of the said will, to the said Minnie Griswold Forbes and Florence Griswold Cross, free and clear of any trust, or, under the eighth section of the last codicil of said will, to the New York Life Insurance and Trust Company, as trustee for said Minnie Griswold Forbes and Florence Griswold Cross under the will of John N. A. Griswold, without the instructions and directions of, and the indemnity furnished by, a decree of this court.

That the said legatees, trustee, and beneficiaries other than as take the residuary clause, have demanded the payment of said legacies previous to the expiration of one year from the date of the death of the testator, and that said estate is solvent and is amply able at the present time to pay in full, from the personal estate, all of the debts and legacies; that the residuary legatees or devisees claim the benefit of any interest or income which might accrue by virtue of said legacies remaining as part of the estate for the period of one year after the death of said testator.

That the complainants are unwilling to pay said legacies to any of said legatees before the expiration of one year from the death of said testator without the instructions and direc-

tions of, and the indemnity furnished by, a decree of this court.

That a question has arisen as to the construction and proper method of administering that portion of said estate disposed of by the seventh section of the fifth codicil, the said Minnie Griswold Forbes and Florence Griswold Cross contending that the sum therein provided for should be distributed one-half to each, and the New York Life Insurance and Trust Company contending that the same should form part of the residuary estate.

And that the complainants are unwilling to pay over and deliver the sum therein provided for, in equal parts, one-half to Florence Griswold Cross, or to the New York Life Insurance and Trust Company, as a portion of the residuary estate, without the instructions and directions of, and the indemnity furnished by, a decree of this court.   In both the fourth section of the fourth codicil and the eighth section of the fifth codicil the residue of the estate was devised and bequeathed, in the earlier codicil, equally to his three children in fee; and in the later one, in trust for his two daughters for life.   The son had deceased, December 23, 1902, without leaving issue surviving him prior to the making of the fifth codicil.   The fundamental rule governing courts in the construction of wills is, so far as possible, to ascertain and give effect to the intention of the testator.   *In re Boardman, Petr.*, 16 R. I. 143; *Bailey* v. *Brown*, 19 R. I. 669, 681; *Tingley* v. *Harris*, 20 R. I. 517, 519; *Gallagher* v. *R. I. Hospital Trust Co.*, 22 R. I. 141, 150; *In re Martin, Petr.*, 25 R. I. 1, 8. " A will should be so construed as to give effect to every word and every part thereof without change or rejection, and the several clauses should be made to harmonize and effect given to all, provided the effect is not inconsistent with the general intent and purpose of the testator as gathered from the entire instrument.

"In construing a will and codicil, or separate codicils, it is a clear and settled rule that they are to be taken and construed together, in connection with each other, as parts of one and the same instrument, and the codicils shall not be taken to vary or modify the will unless such was the manifest intention of the testator." 30 A. & E. Enc. 664, 665.

Is the disposition by the eighth section of the fifth codicil consistent with the prior disposition of the residue by the fourth section of the fourth codicil, or is such disposition by the last codicil irreconcilable with the disposition of the prior codicil? If the two dispositions can be reconciled, it should be done. On the other hand, if the two dispositions are irreconcilable the rule is that the latter should prevail. In *Derby* v. *Derby*, 4 R. I. 414, 428, speaking of inconsistent provisions, the court said:

"To determine then, whether the prior gift, and thereby the power over this estate, has been revoked, we are to inquire whether the devise to Mrs. Derby is consistent with the prior disposition of this estate, and with the execution of the power over it, given in the former will and codicils; and, as the counsel suggests, the great object is to ascertain the intent of the testator, and having ascertained that, effect must be given to it.

"But then this is to be obtained from the instruments themselves,—from the language used by the testator—and viewing that language in the light of surrounding circumstances, and using it in the sense in which the testator used it. So also, as a general rule, all the several instruments, the will and codicils, must be construed together as one instrument, speaking from the date of the last. But because this rule is not universal in its application, it is, that a different rule of construction is applied to inconsistent devices, in the same will, from that which is applied to inconsistent devises in different instruments, as in a will and codicil. In the first case, if there be a devise to A in fee in a prior clause, and in the latter clause, a devise to B of the same estate in fee, A and B take together in fee; because in that case, the testator is supposed to have had but one will or scheme of devise from the beginning, and so intended, that both should have the estate, the one as much as the other; and as this intent cannot be effected otherwise, they shall take together, as joint tenants, or in common. But if the devise to B, instead of being in the same will, be made by a codicil, as the testator is presumed to have changed the intent which he then had, his last will shall take effect, and the estate

go wholly to B.   Nevertheless, for most purposes, the several instruments are to be treated as made together, and as one."

"It does not however require an express revocation, to make the intent to revoke clear.   It is sufficient, that the intent to make a disposition of the estate which is inconsistent with the prior gift is made clear as the original gift."

(1) "The simple question then is, is the device to Mrs. Derby, of the mansion-house and its furniture, consistent with the prior disposition of the testator's estate to these legatees, and with the power given the executor to sell all his estate for their payment? If it is, then the power must be executed, and the estate sold. If, on the other hand, it is not consistent, then the prior disposition must yield, and the power of sale must also yield."

In Redfield on Wills, vol. 1, Sec. 443, 4th Ed. the rule is stated:

"The general rule, in regard to repugnancy in the different portions of a will, seems to have been established from a very early day; that when there is no fair and reasonable mode of reconciliation, the latest of the contradictory provisions shall prevail.   But this rule has not gained universal consent."

The author then proceeds to take up the exceptions to the rule in cases where there is a possibility of reconciliation.

"If possible the court will reconcile two dispositions apparently inconsistent, and in so doing, will endeavor not to disturb the first further than is absolutely necessary to give effect to the second.   But if they are absolutely irreconcilable, the posterior in local position is to be preferred."

In *Lamb* v. *Lamb,* 11 Pick. 371, at p. 376 Shaw, C. J., says:

"A codicil is a clause added to the will after its execution, the purpose of which usually is to alter, enlarge or restrain the provision of a will, or to explain, confirm and republish it. It does not supersede the will as an after made will could do, but is a part of it to be construed with it as one entire instrument.   It comes within the rule that all is to be taken together. Of course, it follows from this view, that a will is not altered by the codicil, except by express words or necessary implication. It is to be deemed altered by necessary implication where a

subsequent provision is inconsistent with and repugnant to a prior provision and this is followed by the acknowledged principle that 'where both can stand together both shall have effect' and that where there are two conflicting clauses the latter will stand as being the latest expression of the testator's intention."

It is not possible to reconcile the conflicting provisions. There could, of course, be but one residue,—that which was left after the payment of the debts, legacies, specific and general, and satisfying the other specific gifts. So that it is obvious that the testator, under the fourth clause of the fourth codicil and the eighth clause of the fifth codicil, had the same property in mind, namely, the residue of his estate.

It is evident, furthermore, that, at the time of executing each codicil, he intended to make it the residuary clause. Had each of these instruments devised the property to two different persons directly, or to two different trustees in trust, it might possibly then be said that the two former persons should take as tenants in common, and in the latter, that the two persons should be co-trustees. But in this case the two provisions are distinct. In one case the testator provides that the residue shall be transferred directly over to the residuary legatees, thus, vesting the property in them absolutely and immediately and with full control over the same. But not so in the latter provision. By this they have merely a life estate, with remainder over to their children. They have also only the income. Under these circumstances the provisions of the two codicils can not be reconciled.

Furthermore, it appears that, between the time of the execution of the two instruments, George Griswold, one of the three children who received the residue under the first provision, died. This may have been one of the reasons for the change. Testator may have wished to pay over to George Griswold his share directly and he may not have wished to make any distinction between his children, so that he gave it to them all alike, and directly, while he was living.

The intent of the testator is further borne out by the lan-

guage used. In the fourth clause of the fourth codicil he enumerates the debts and legacies to be paid. In the eighth section of the fifth codicil he uses the expression: "I hereby direct my executors to pay my debts, funeral expenses, and legacies as directed by my will and the several codicils thereto" . . . including all of the legacies disposed of by the previous codicils.

Moreover, the fifth codicil shows an intent on the part of the testator to redraft his will. He appoints the executors who finally serve in that capacity, increases certain legacies already made, makes final allowance for his wife, disposes of the residue and especially authorizes the beneficiaries under the trust of the residue to dispose of the same by their last will and testament, referring to the property held in trust under the provisions of this codicil. In fact, almost every provision in the will is referred to or changed in this codicil. He virtually in that codicil makes the entire disposition of his property. There could be no possibility of his intending that the same should be taken in connection with any other.

As the clauses can not possibly be adjusted, the latter should control; as it effectively disposes of the residue and shows an intent contrary to that manifested in the previous clause.

(2)     Jane Emmet Griswold having predeceased the testator, the gift of one hundred and fifty thousand dollars to the New York Life Insurance and Trust Company, in trust, by the seventh section of the fifth codicil, does not lapse.

"The general rule that by the death of a legatee or devisee before the testator his interest under the will lapses, relates only to the interest of the person so dying, and where there are other interests grafted or limited upon that of the deceased legatee or devisee, they do not necessarily fail.

"Thus where a life tenant dies before the testator, but the person entitled in remainder survives him, the death of the life tenant only extinguishes the life estate, and the remainderman is let into immediate right to the gift as soon as the will takes effect." 18 Am. & Eng. Ency. of Law (2nd Ed.) 752; *Mowatt* v. *Carow*, 7 Paige 328; *Taylor* v. *Wendel*, 4 Bradf. (N. Y.) 324.

"It is well settled that where there is a devise or legacy to two in succession, and it fails as to the first for causes that would but for the gift over, create a lapse, the next in succession shall take it." *Brown* v. *Brown*, 43 N. H. 17; *Yeaton* v. *Roberts*, 28 N. H. 459; *Robison* v. *Female Orphan Asylum*, 123 U. S. 702; *West* v. *Williams*, 15 Ark. 682; *Bates* v. *Dewson*, 128 Mass. 334; *Goodall* v. *McLean*, 2 Bradf. (N. Y.) 306; *Lawrence* v. *Hebbard*, 1 Bradf. (N. Y.) 252.

The English cases are to the same effect. The estate in remainder is not extinguished.—*In re Pinhorne* (1894), 2 Ch. 276. See also *Ledsome* v. *Hickman*, 2 Vern. 611; *Bird* v. *Lockey*, 2 Vern. 744; *Willing* v. *Baine*, 3 P. Wms. 113; *Humphreys* v. *Howes*, 1 Russ. & M. 639; *Gittings* v. *M'Dermott*, 2 Myl. & K. 69; *Le Jeune* v. *Le Jeune*, 1 Jur. 235; *Archer* v. *Jegon*, C. P. Coop. 172.

Jane Emmet Griswold having died before the testator, the legacy is in effect to the New York Life Insurance and Trust Company, in trust, to pay over one-half to Minnie Griswold Forbes and one-half to Florence Griswold Cross. The trust is therefore a mere naked trust, and the legacy should be paid direct to them.

(3)   The legatees, other than those who take under the residuary clause, have requested payment of their legacies previous to the expiration of one year from the date of the death of the testator. The complainants admit that the estate is solvent. The executors clearly can not be required to pay the legacies prior to the expiration of said period of one year from the death of the testator.

In *Esmond* v. *Brown*, 18 R. I. 48, 49, this court said:

"The general rule, which has been recognized and applied in this State, is that the legatee of a pecuniary legacy when no time of payment is specified in the will is entitled to interest after the lapse of one year from the death of the testator. *Derby, Executor,* v. *Derby et als.,* 4 R. I. 414; *Spencer, Petitioner,* 16 R. I. 25, 32; *Wood* v. *Hammond,* 16 R. I. 98, 106; *Chafee* v. *Maker,* 17 R. I. 739." . . .

"The rule is founded on the principle that interest follows

as an incident of, or accretion to the legacy and not on the principle that its payment is imposed on the executor as a penalty for his default or neglect. Hence it is recoverable from the time the legacy is payable though no demand for payment has been made."

*In re Spencer Pet.*, 16 R. I. 25, 32, the court said:

" We are of the opinion that the pecuniary legatees are entitled to interest after a year from the death of the testator when they are subject to no contingency and no time for payment is specified. This is the general rule, and should be followed in the absence of any clear intent that it should not be followed."

General Laws, 1909, cap. 254, § 41, p. 887, provides:—

" Unless otherwise provided in the will, a general pecuniary legatee shall not be entitled to interest on his legacy for the period of one year from and after the death of the testator; and from and after said period the executor, or administrator with the will annexed, unless otherwise provided by the testator, shall not be chargeable for more interest on any pecuniary legacy than the entire net income actually earned by such legacy if and when left in the investment as made by the testator, or actually invested in notes secured by mortgage upon real estate situated in this state, or in the bonds of any city or town in this state, or deposited in any savings bank in this state, or in the participation-account of any trust-company in this state, or invested in any other manner specially ordered by the probate court; but if otherwise invested, such legacy shall bear interest at the rate of six per centum per annum or such larger rate as the same may have earned:   *Provided,* however, that nothing herein contained shall authorize executors or administrators to make investments other than trustees are allowed to make, unless specially authorized by the will so to do."

While, however, it is clear that the executors can not be required to pay legacies prior to the time specified in said rule, it is also clear that the executors may pay prior to the expiration of the year if they so desire. Thus, 2 Woerner, Am. Law of Administration, sec. 454, after stating the general

rule, says: "But the time is given simply for the convenience and protection of the executor; hence he may discharge the legacies at any earlier period if the estate be such as to enable him to do so," citing *Evans* v. *Inglehart*, 6 Gill. & J. 171; and *Sullivan* v. *Winthrop*, 1 Sumner, 1, 19.

In the last-mentioned case, Justice Story, pp. 18, 19, said: "But there is one circumstance in the case, which materially affects the application of the rule in the present case. It appears that the executors did in point of fact within the year invest six thousand dollars in their own names as trustees of Mrs. Sullivan, and also, upon the written request and upon security given by her husband, did loan to him the farther sum of three thousand dollars, making in the whole an investment in fact upon her account of $9,000. Now it appears to me, that this was equivalent to the payment of so much of her legacy. It was an appropriation of so much to her exclusive account, and discharged the estate of the burthen *pro tanto*. In the case of such a payment within the year directly to a legatee, there can be no doubt, that the subsequent income of the sum so paid must belong to the legatee. It appears to me, that the appropriation of the sum in the hands of the trustees of Mrs. Sullivan for her use, and on her account exclusively, is not distinguishable in principle from the case of payment. It has been already stated, that Mrs. Sullivan could not claim interest until after the year; and the executors could not be compelled to pay the legacy until that period. But it by no means follows, that, as a matter of discretion, the executors were not at liberty to pay the legacy within the year. There would be no breach of duty in so doing. They might, if they had seen fit, have invested the whole $20,000 for Mrs. Sullivan exclusively in stock within the year; and if they had, she would from the time of the investment have been entitled to the income. In *Pearson* v. *Pearson*, 1 Sch. & Lefr. 10, 12, Lord Redesdale said: 'The executor may pay the legacy within the twelve months; but he is not compelled to do so. He is not to pay interest for any time within the twelve months, although during that time he may have received interest. But if he has assets, he is to pay

from the end of the twelve months, whether the assets have been productive or not.'   And in the recent case of *Angerstein* v. *Martin*, 1 Turner & R. 232, 241, Lord Eldon said: ' I know of no case, which prevents executors, if they chose, from paying legacies or handing over the residue within the year; and if it is clear *currente anno*, that the fund for the payment of debts and legacies is sufficient, there can be no inconvenience in so doing.' The same doctrine is found in elementary writers, 2 Roper Leg. ch. 20, sec. 2, p. 1250, (White's Edition).   But it is sufficient for my guidance, that it is founded in reason, and has the authority of such extraordinary judges, as Lords Eldon and Redesdale to support it."

In *Thorn* v. *Garner*, 113 N. Y. 198, the court held that a legatee was not entitled to interest on a legacy previous to the end of the time fixed for its payment, but held further, on page 206, that if advancements were made before that time by the executor, he would not be charged upon his account with the interest earned by the amounts so advanced.

Further, our statute expressly provides that an executor may pay legacies before the expiration of the year.   General Laws 1909, cap. 318, § 11, provides:

"When an executor or administrator, after having given bond for the discharge of his trust, is requested by a legatee to make payment in whole or in part of a legacy, the probate court, if such executor or administrator consents so to do, may require that such legatee shall first give bond to the executor or administrator, with surety or sureties to be approved by the court, and conditioned to refund the amount so to be paid, or so much thereof as may be necessary to satisfy any demands that may be afterwards recovered against the estate of the deceased and to indemnify the executor or administrator against all other loss and damage on account of such payment."

While the executor can not be compelled to pay the legacies before the expiration of one year from the death of the testator, such payment may be made prior to that time if the executor so elects.   If a legacy is paid before the time required, the income thereof from the time of payment necessarily goes to the legatee.

(4)    The gift to Mary Byrd Derby, in the fourth section of the will, is within one of the well-recognized exceptions to the rule. The bequest to her is of the income for life, and bears interest from the death of the testator.  This has long been the well-settled rule.  *Pell* v. *Mercer,* 14 R. I. 412, 432; *Bailey, Petitioner,* 13 R. I. 543, 560; *Lovering* v. *Minot,* 9 Cush. 151; *Hilyards' Estate,* 5 Watts & S. 30; *Eyre* v. *Golding,* 5 Binney 472; *Townsend's Appeal,* 106 Pa. St. 268; *Flickwir's Estate,* 136 Pa. St. 374; *Green* v. *Blackwell,* 32 N. J. Eq. 768; *Ayer* v. *Ayer,* 128 Mass. 575, 577; *Sargent* v. *Sargent,* 103 Mass. 297; *Pollock* v. *Learned,* 102 Mass. 49; *Matter of Stanfield,* 135 N. Y. 292; 2 Woerner Am. Law of Administration, sec. 458.  Moreover, Gen. Laws, R. I. 1896, cap. 203, § 38, provides:  "When an annuity or the use, rent, income, or interest of property, real or personal, is given by a will, or by an instrument in the nature thereof, to or in trust for the benefit of a person for life or until the happening of a contingent event, such person shall be entited to receive and enjoy the same from and after the decease of the testator, unless it is otherwise provided in such will or instrument."

Upon the fund given in trust by the fourth section of the will, therefore, the income is payable from the death of the testator.

A decree may be presented in accordance with this opinion, in order that the same may be approved by this court and ordered to be entered in the Superior Court.

*Sheffield, Levy and Harvey,* for complainants.

*William Paine Sheffield, Clark Burdick, William MacLeod,* for various respondents.